GEORGE H. FRENCH v. JAMES E. DE BOW, JOHN Y. STONE ET AL.

*Notice of attachment—Restoration of mortgage lien.*

Filing in the register's office a certified copy of an attachment on lands is not made notice of the attachment proceedings to third parties.  Comp. L., § 6406.

The mere levy of execution in attachment does not give the creditor any rights analogous to those of a *bona fide* purchaser.

An execution creditor, on making sale and becoming the purchaser, may acquire new equities; but until then he stands in the rights of his debtor and his levy may be defeated by equities which the debtor cannot resist.

Equity contemplates a lien discharged by mistake as still in existence.

A mortgagee discharged mortgages on certain lands in consideration of a deed of a portion of them which he understood to be otherwise unincumbered, but on which, in fact, an attachment of which he had no notice had been levied since the mortgages were given, though the land had not been sold on execution. *Held* that it was within the jurisdiction of equity to set aside the discharge; and that the attachment creditor was not deprived of rights thereby, but the equities were adjusted between the parties.

*It seems* that a complainant seeking to re-instate a lien which he has discharged by mistake on lands of which he has since been in possession, might be required to account for rents and profits if the pleadings raised the question in the trial court.

Appeal from Calhoun. Submitted April 12. Decided April 16.

BILL TO SET ASIDE THE DISCHARGE of a mortgage, and for foreclosure and sale. Defendant Stone appeals.

*John C. Stetson* and *Miner & Stace* for complainant. Relief may be claimed by one who has discharged a mortgage by mistake on false representations innocently made, *Steinbach v. Hill*, 25 Mich., 78; *Evants v. Strode*, 11 Ohio, 480; *McNaughten v. Partridge*, id., 223; *Stover v. Wood*, 26 N. J. Eq., 417; *Hunt v. Rousmanier*, 8 Wheat., 212; *Torrance v. Bolton*, L. R. 14 Eq. Cas., 124: 3 Eng., 674: L. R. 8 Ch. App., 118: 4 Eng., 800; *Lewis v. McLemore*, 10 Yerg., 206; 1 Story's Eq. Jur., § 167; an attachment only covers the defendant's interest, *Barnes v. Camack*, 1 Barb., 392; *Hyde v. Tanner*, id., 75; *Dickerson v. Tillinghast*, 4 Paige, 221.

*John C. Patterson* and *Wm. H. Brown* for defendant Stone. If a mortgage has been paid and discharged

it cannot be revived to cut off a subsequent execution levy, *Marvin v. Vedder*, 5 Cow., 671; *De la Vergne v. Evertson*, 1 Paige, 182; *Winslow v. Clark*, 2 Lans., 377; *Mead v. York*, 2 Seld., 449; *Angel v. Boner*, 38 Barb., 425; *Purser v. Anderson*, 4 Edw., 17; *McCabe v. Farnsworth*, 27 Mich., 63; omission to search the book of levies on taking a conveyance of lands, is negligence, 1 Story's Eq. Jur., §§ 146, 195; *Penny v. Martin*, 4 Johns. Ch., 566; one cannot be deprived of a lien, *Gunn v. Barry*, 15 Wall., 622; *Westervelt v. Gregg*, 12 N. Y., 202.

COOLEY, J. In 1867 James E. De Bow being indebted to complainant in the sum of $1278 executed and delivered to him as security therefor a mortgage of eighty acres of land in Homer, Calhoun county, and in 1868 a further indebtedness of $300 having arisen, a second mortgage was given, covering the same lands, and also certain lots in the village of Homer. These mortgages remained unpaid until March 27, 1876, when the parties entered into an arrangement under which complainant was to take the eighty-acre lot in satisfaction of his demands, and discharge the mortgages. This arrangement was carried out by the execution of the proper conveyances, and by the discharge of the mortgages of record. All this was done in the full belief on the part of complainant that the title to the lands he was thereby acquiring from De Bow was unincumbered, and not until some time in the early part of 1877 did he ascertain that defendant Stone, in the year 1870, had sued out of the circuit court for Calhoun county an attachment against the property of De Bow, and caused the same to be levied on the lands described in the mortgages. A certified copy of the attachment was duly filed by the sheriff in the office of the register of deeds of the county, immediately after it was levied, but nothing further was done in the attachment suit until December 1876, when Stone proceeded to judgment therein, and in January following caused an execution

on the judgment to be levied on the same lands. When the attachment proceedings came to the knowledge of the complainant he at once filed a bill in equity, setting forth the facts above recited, charging De Bow with fraud in procuring the discharge, praying that the discharge be set aside, and that the lien of his mortgages be restored and established as if the discharge had never been given. He also prayed for foreclosure and sale.

The case was heard on pleadings and proofs in the court below, and decree entered for complainant in accordance with the prayer of his bill. Very little controversy is made over the facts. No fraud is made out against De Bow, but it is very satisfactorily shown that complainant had no knowledge of the attachment proceedings when the discharge was given. Many objections are taken to the decree, and we shall notice all that seem to us to require special attention.

1. It is said that complainant has no equities because, by the filing of the proper papers in the office of the register of deeds, he and all other persons were duly notified of the attachment, and he must therefore be deemed to have acted with full knowledge of the attachment lien when he gave the discharge.

This objection depends for its force upon the answer to the question whether the filing of the attachment papers is constructive notice. Upon that subject the statute is silent. It provides only that "Real estate shall be bound, and the attachment shall be a lien thereon, from the time when it was attached, if a certified copy of the attachment, with a description of such real estate, shall be deposited in the office of the register of deeds in the county where the same is situated, within three days after such real estate was attached, otherwise such attachment shall be a lien thereon only from the time when such certified copy shall be so deposited." Comp. L., § 6406. This does not make the copy filed notice to third parties. *Columbia Bank v.*

*Jacobs,* 10 Mich., 349; and the case must consequently be disposed of on the assumption that complainant had no notice of the attachment proceedings, actual or constructive, when the discharge of the mortgages was given.

2. Defendant Stone insists that whether complainant had notice of the attachment or not is really immaterial in this proceeding, inasmuch as the levy of execution was made while the mortgages remained undischarged, and thereby new rights were acquired in which he is entitled to be protected as being rights superior to any which complainant can have to the restoration of a lien not in existence when the levy was made. But it was held in *Columbia Bank v. Jacobs,* supra, that a mere levy did not give to the creditor any rights analogous to those of a *bona fide* purchaser, and the same principle has been recognized at the present term in *Michigan Panelling, etc. Co. v. Parsell,* ante, 475. The creditor, when he makes sale on his execution and becomes the purchaser, may thereby acquire new equities; but until that time he stands in the rights of his debtor, and the levy may be defeated by equities which the debtor is unable to resist.

3. Reliance is placed on *Bennett v. Nichols,* 12 Mich., 22, as authority for the doctrine that equity is incompetent to create a lien upon land. That doctrine has no application here. A lien discharged by mistake is in contemplation of equity still in existence, and the decree only declares and enforces it.

4. What has already been said would seem to dispose of the argument that Stone, by his levy has acquired vested rights of which he cannot be constitutionally deprived. We may concede to the fullest extent the doctrine that the legislature cannot take away a statutory lien (*Gunn v. Barry,* 15 Wall., 610), and the question only recurs whether this defendant ever had any lien as against the equities of the complainant. If he did not, then no question of vested rights is involved. It has been shown that only through mistake of fact did complainant divest himself of his own previous liens;

and it is contrary to equity for defendant to attempt to take advantage of that mistake. But it has well been said that "courts do not regard rights as vested contrary to the justice and equity of the case." *State v. Newark*, 3 Dutch., 197. Constitutional principles would be a mockery of justice if they might be seized upon to protect an accidental legal right to the destruction of substantial equities. It is a misuse of terms to call the action of the court below the depriving of this defendant of rights: all it did or assumed to do was to adjust between these parties their respective equities; and this it did in the exercise of an undoubted jurisdiction, and without in the least venturing upon doubtful ground.

5. The decree undertook to restore the complainant to his position as mortgagee of the lands previous to the discharge being given, and a sale of the mortgaged premises was ordered, to satisfy the amount due on the mortgages, unless the amount due and costs should be paid within five months. Some formal objections are made to the decree which we think not tenable. The objection that complainant, who had for a time been in possession of the eighty-acre lot, should have been required to account for rents and profits might have had force if the pleadings had brought it to the attention of the court below, but they did not.

The decree should be affirmed with costs against the appellant.

The other Justices concurred.