96 619
103 525

### EMANUEL SCHLOSS ET AL. v. LYMAN FELTUS.

*Sale—Fraud—Bona fide purchasers—Replevin.*

1. Actual payment in good faith is necessary to complete a *bona fide* purchase.

2. A purchaser from a fraudulent vendee will only be protected to the extent of payments actually and in good faith made.[1]

3. The acceptance of goods sold from samples must be something more than the mere receipt of the goods, and involves some act on the part of the vendee after he has exercised, or had the means of exercising, his right of rejection.

4. A member of an insolvent firm ordered a bill of goods from samples, and upon credit, which he secured by misrepresenting the financial condition of the firm. Before examining the goods with reference to their acceptance, he sold them, as also the entire stock, to creditors at an agreed price, which was credited to the firm in account. The creditors then sold the goods and stock to a fourth party, and charged him with the purchase price, no part of which was paid until after the goods had been replevied from him by the vendors. And it is held that the defendant was not a *bona fide* purchaser, and that the creditors were not *bona fide* purchasers, as against the vendors.

Error to Chippewa. (Steere, J.) Argued June 28, 1893. Decided July 26, 1893.

[1] See *Zucker v. Karpeles,* 88 Mich. 413.

Replevin. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*H. M. Oren* (*Julian G. Dickinson*, of counsel), for appellants.

*McMahon & Yerkes* (*M. C. Burch*, of counsel), for defendant.

McGrath, J. This is replevin to recover merchandise from one claiming as purchaser from an alleged fraudulent vendee.

Smith & Hassock, in September, 1890, were carrying on a lumber business at Raber, Chippewa county, and kept a general store in connection therewith. Mueller & Raber, of Chicago, made advances to Smith & Hassock from time to time, and took their lumber product. On September 16, 1890, Smith was at Detroit, and gave a verbal order to plaintiffs for a quantity of merchandise. From Detroit, Smith went to Chicago, and saw Mueller & Raber; from Chicago, returned to Raber, arriving there on Saturday, September 27. Before reaching home, Smith had learned that Mueller & Raber had refused to accept certain drafts which Smith & Hassock had drawn upon them for further advances, and on his way to Raber, at St. Ignace, Smith met Mr. Raber, who was also on his way to Raber to investigate the affairs of Smith & Hassock, who were largely in arrears to the firm of Mueller & Raber. Learning of this condition of things, Smith telegraphed from St. Ignace to one Keliher, another creditor of the firm of Smith & Hassock, informing him that his account was in danger, and Keliher arrived at Raber on Sunday morning, and prepared to take out a writ of attachment on Monday morning. Mr. Raber also arrived at Raber on Saturday, the 27th. All of the parties sat up all night Sunday night, and on Monday morning, as early as 1 o'clock,

Keliher had attached, and Raber had secured a bill of sale of all the assets of the firm of Smith & Hassock, including the goods purchased from plaintiffs.

While *en route* to Raber, and at St. Ignace, presumably by appointment, Mr. Raber met defendant, who was a member of the firm of Lyman Feltus & Co., who were carrying on business in that vicinity, the firm being composed of Feltus, Mueller, and Raber, and informed him of the purpose of his visit to Raber. He says that he told Feltus that he was going down to investigate affairs, and, in case he decided not to continue the business there, he wanted him to go over there and buy the business; and "I asked him if he would consider that, and, if he did, that I would let him know when I had come to a conclusion, and, if so, to come over there, and he said he would." Feltus was on hand at Raber Tuesday morning, and Raber assigned to him the entire stock and assets received from Smith & Hassock. The goods were replevied October 6, 1890.

Mueller & Raber simply credited Smith & Hassock, upon their indebtedness, with the amount agreed upon as the value of the assets transferred; paid the amount of Keliher's attachment; and agreed with Smith to pay certain labor claims, none of which, however, were paid until November following, and the total amount of which was less than $2,300. Defendant was charged upon the books of Mueller & Raber with the value which they fixed upon the assets at the time of the transfer of the same to Feltus, and he paid nothing on the alleged purchase until after the goods had been replevied. Hassock had simply a working interest in the business. The goods had been bought on credit, and had been ordered from samples. They had arrived at Raber but a short time before Smith and Raber arrived there. Most of them were still in the original packages. When Smith arrived, he told Hassock that the goods

were to be sent back, and, before the transfer to Mueller & Raber, he told Raber that they ought to be sent back.

There was testimony tending to show that, when the goods were ordered, Smith misrepresented the financial status of the firm, and, when asked, withheld knowledge of the actual situation of affairs. It is clear, also, that before the transfer to Mueller & Raber, he had not examined the goods with reference to their acceptance. The evidence clearly tended to show that when Smith undertook, by the transfer of the goods, to exercise an act of ownership over them, he did so knowing that he could not continue the business.

Under this state of facts, defendant was not a *bona fide* purchaser, nor were Mueller & Raber, so far as plaintiffs' right of recovery was concerned. The stock of goods and other property transferred to them were valued at $10,000, the amount advanced to Keliher was $1,143.94, and the judgment for defendant in the court below was $1,120.92, leaving a margin still of $7,735.14. It is unimportant, therefore, whether the payment of Keliher's claim was or was not a part of the consideration for the transfer, or whether that payment would constitute Mueller & Raber *bona fide* purchasers to that extent. It is well settled that actual payment in good faith is needed to complete a *bona fide* purchase, and, in any event, a purchaser from a fraudulent vendee can only be protected to the extent of payments actually and in good faith made. *Dixon v. Hill,* 5 Mich. 404; *Kohl v. Lynn,* 34 Id. 360; *Webster v. Bailey,* 40 Id. 641; *McGraw v. Solomon,* 83 Id. 442.

If Smith, at the time that the order was given, misrepresented to plaintiffs the financial condition of the firm, and plaintiffs, in reliance upon the representations made, gave him credit, or if he, before he accepted the goods, knew that he could not continue the business, he was chargeable with accepting and transferring the goods

with an intent not to pay for them, and plaintiffs were entitled to recover. *Whitten v. Fitzwater,* 129 N. Y. 626 (29 N. E. Rep. 298). Smith was the only member of the firm who saw the samples, and who knew the kind and quality of the goods ordered. For the purpose of an acceptance of goods, the vendee must have had an opportunity of exercising his judgment with respect to the articles sent. The acceptance must be something more than a mere receipt; it means some act done after the vendee has exercised, or had the means of exercising, his right of rejection. Benj. Sales, § 154.

In the case of *Nicholson v. Bower,* 1 El. & El. 172, 28 Law J. Q. B. 97, there had been no specific goods selected and fixed on in advance. Bower had made a verbal sale of a quantity of wheat by sample, to be delivered by rail in London. The wheat was received at the London depot, and warehoused by the railway company, and the purchasers sent a carman to get a sample, and, after inspecting it, told him not to cart the wheat home at present. The purchasers were really in insolvent circumstances, and, immediately after the interview with the carman, determined to stop payment, and they therefore thought it would be dishonest to receive the wheat, although equal to sample, when they knew they could not pay for it. Held, that there had been no acceptance in fact, and a verdict in favor of the assignees of the purchasers was set aside.

The judgment must be reversed, and a new trial ordered.

HOOKER, C. J., and GRANT, J., concurred with McGRATH, J. MONTGOMERY, J., concurred in the result. LONG, J., did not sit.