### HEENAN *v.* FOREST CITY PAINT & VARNISH CO.

1. APPEAL AND ERROR—FAILURE TO EXCEPT—ESTOPPEL TO ALLEGE ERROR.

   Defendant cannot object to the setting aside of a default entered for failure of plaintiff to file a bill of particulars, where the record does not show an exception to the ruling, and the order setting aside the default was acted on by defendant in amending his plea.

2. CHATTEL MORTGAGES—TROVER BY MORTGAGEE—EVIDENCE.
   In trover by a chattel mortgagee against a creditor of the mortgagor to recover a part of the mortgaged property, which he had replevied, a draft which furnished the consideration for the mortgage was admissible in evidence.

3. SAVING QUESTIONS FOR REVIEW—FAILURE TO EXCEPT.
   Rulings to which no exceptions are taken cannot be reviewed on error.

4. WITNESSES—REFRESHING RECOLLECTION—MEMORANDUM.
   A witness may use a memorandum in his own handwriting to refresh his recollection.

5. HARMLESS ERROR—EVIDENCE—DIRECTED VERDICT.
   Errors in admitting evidence are immaterial in a case where a verdict was properly directed for the appellee.

6. CHATTEL MORTGAGES — FAILURE TO FILE — VALIDITY AS TO THIRD PERSONS.
   An unfiled bona fide chattel mortgage is valid as to a creditor whose claim accrued prior to its execution.

7. SAME—VALIDITY—FRAUD OF MORTGAGOR.
   A bona fide chattel mortgage for value on goods previously obtained by the mortgagor by fraud, which is filed before the seller of the goods has taken any steps to recover them, is entitled to precedence over the claim of the seller.

Error to Macomb; Tucker, J. Submitted November 16, 1904. (Docket No. 91.) Decided December 22, 1904.

Trover by John Heenan against the Forest City Paint & Varnish Company and Clarence Dryer. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Affirmed.

*Martin Crocker*, for appellants.

*Byron R. Erskine*, for appellee.

MONTGOMERY, J. The facts in this case, so far as material for an understanding of the points involved, are as follows: Frank E. Horning, a young man of 26 years, was engaged in the retail hardware business at the village of Lenox. He desired to enlarge his business, and in-

duced his father, James L. Horning, to put up a brick store building in said village for that purpose. James L. Horning had no connection with the business of his son, but was engaged in the manufacture of bale wire in a small way in the same village. The father purchased some lots for the proposed building, taking the title in the name of himself and the son as tenants in common, and the erection of the store was commenced. It became necessary to negotiate a loan for building purposes, and application for the same was made to plaintiff, who resides at Dryden, Mich., and conducts a private banking business at that place, and who was acquainted with James L. Horning; having had business relations with him for a number of years. On May 6, 1901, plaintiff loaned them $2,000; taking a mortgage on the real estate. The money for this loan was not paid over at once, but credit was given on the books of the bank, and it was checked out as the building progressed. November 4, 1901, James L. and Frank E. Horning went to Dryden to negotiate a further loan of $1,000 upon the building; requiring an additional sum for building purposes. This loan was also arranged with plaintiff, but, as the wives of the proposed mortgagors were not present, it was arranged that Mr. McCluskey, plaintiff's bookkeeper and cashier, should shortly come to Lenox and perfect the loan. At the same time Frank E. requested a loan to himself of $1,000 upon his stock of merchandise in the store. He had made overdrafts at Mr. Acker's bank at Richmond—the Richmond Bank—and was anxious that these overdrafts be taken care of, to prevent his checks from going to protest. Frank E. was little known to plaintiff, and, on James L. indorsing the chattel-mortgage note, the loan was made. The chattel mortgage and note were prepared by Mr. McCluskey, and then and there executed. Upon the execution of the chattel mortgage and a note, a draft of $900 was given Frank E. Horning. The remaining $100 was not paid in money. The fact that the $900 was paid is not disputed.

On November 11, 1901, Mr. McCluskey, as per arrangement, went to Lenox, and made the $1,000 real-estate mortgage on the store building. The consideration for this mortgage was a note of $500 that had been previously given, the accrued interest, a draft of $460.68, and a charge of $25 as bonus. These real-estate mortgages and the chattel mortgage are entirely distinct transactions, and have no connection with each other. The money thus obtained by Frank E. Horning was all used in his business, but evidently afforded him but temporary relief. On November 7, 1901, he gave a bill of sale of his stock to his father, who was a large creditor, and who thereupon took possession, and endeavored to save something out of the business by compromising with creditors. Shortly after obtaining possession, James L. wrote a letter to plaintiff, informing him of the bill of sale; and Mr. McCluskey came to Lenox on December 18, 1901, and had James L. and Frank's wife sign the chattel mortgage, and filed it in the proper townships. This mortgage had not been filed before, as plaintiff testified, simply through inadvertence; he being not at all uneasy about the security. The goods had all been sold and delivered before the chattel mortgage was executed, and no credit was extended by defendant or any one else while unfiled.

In December, 1901, Mr. Adams, representing the defendant company, came to Lenox in reference to this claim, and endeavored to get James L. Horning to return the goods. The latter stated that he had no right to do so, inasmuch as Mr. Heenan had a chattel mortgage on all the goods. The defendant then claimed the goods were obtained by false representations, and proceeded to replevy the goods, but did not tender back the money received as part of the purchase money therefor. After the goods were removed from the store, plaintiff made a demand for the same, and, upon the demand being refused, brought trover for their value and recovered judgment; the trial judge directing the jury to return a verdict for

the value of the goods at wholesale, adding the cost of the cartage.

Some testimony was given below tending to show misrepresentations on the part of Frank E. Horning at the time of the purchase of the goods. There is no evidence that plaintiff knew anything of the alleged fraud. Besides plaintiff's positive evidence to that effect, and that he had never before heard of the defendant company, it was made to appear by defendant's evidence that he could not have known of any such claim, because it was not made until December, 1901. Mr. Adams, defendant's agent, testified that he had exclusive charge of this matter; that after the sale he was not at Lenox again until he heard of the bill of sale to James L. Horning; that it was not until December 13th, when he came to Lenox, that the defendant first discovered the falsity of the alleged misrepresentations; and that no claim of fraud was made until December 18, 1901, defendant company up to that time believing the statements to be true.

There are 29 assignments of error, but, as these are grouped by the counsel for appellant, we need not discuss the assignments in detail.

The first point discussed is that arising over the ruling of the court in setting aside plaintiff's default, which defendant had entered because of plaintiff's failure to furnish a bill of particulars. The answer to this contention is that not only does the record fail to show an exception to the ruling, but the inference is a fair one that defendant was content with the order made, and acted upon it in amending his own plea, which was apparently all that defendant asked as a condition to the vacation of the default.

It is next argued that error was committed in admitting in evidence the draft which furnished the consideration of the chattel mortgage. The testimony was plainly competent, but here, again, the record fails to show any exception to the ruling.

Error is assigned upon the ruling of the court admitting

in evidence an affidavit of renewal of the chattel mortgage. It is clear that this ruling did not damage defendant's case, if the court was right in its main ruling; but this point is open to the same answer as that given to the preceding one—no exception appears to have been taken to the ruling.

The next ruling to which an exception was taken was one permitting a witness to use a memorandum in his own handwriting for the purpose of refreshing his recollection. This ruling was right.

None of the other minor assignments merit discussion. Many of them are not based on proper exceptions, and, when exceptions are taken, the questions relate to rulings which became immaterial if the court was justified in directing a verdict.

We think the ruling directing a verdict was clearly right. The mortgage was given for a valuable consideration. There was no notice to or knowledge possessed by plaintiff of any fraud committed by Horning. Before any action was taken by defendants to reclaim the goods, their agent had notice of the mortgage which was filed at about that time. No credit was extended, nor was any action of defendant taken, on the strength of the absence of the mortgage from record. The mortgage was therefore good as against defendant. *First Nat. Bank* v. *Guntermann*, 94 Mich. 125. That the plaintiff was entitled to priority over defendant—the plaintiff being a bona fide mortgagee, and defendant having, by means of the purchaser's fraud, been induced to invest the latter with indicia of ownership—see *Zucker* v. *Karpeles*, 88 Mich. 430; *Hoffman* v. *Railway Co.*, 125 Mich. 201–205.

The judgment is affirmed.

The other Justices concurred.