In re MISSION FIXTURE & MANTEL CO.

(District Court, W. D. Washington, N. D.   May 19, 1910.)

No. 4,041.

1. CHATTEL MORTGAGES (§ 196*)—FAILURE TO FILE—EFFECT.
   Under Act Wash. March 13, 1899 (Laws 1899, c. 98) §§ 2, 3, 6, requiring chattel mortgages to be filed within 10 days after their execution, and making filed mortgages notice to the world, until filing a mortgage not filed within that time, does not affect creditors, whether antecedent or subsequent.
   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 429; Dec. Dig. § 196.*]

2. BANKRUPTCY (§ 161*)—PREFERENCES—CHATTEL MORTGAGES.
   Since a chattel mortgage not filed within 10 days as required by Act March 13, 1899 (Laws Wash. 1899, c. 98) §§ 2, 3, 6, first became a lien when filed, it constituted a preference when filed within four months next preceding the mortgagor's bankruptcy.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 261; Dec. Dig. § 161.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the Mission Fixture & Mantel Company, bankrupt. Order of the referee, allowing a claim of Northwest Trust & Safe Deposit Company as an unsecured claim, affirmed.

Leander T. Turner and Sandford C. Rose, for claimant.
McClure & McClure, for trustee.
Carkeek & McDonald, amici curiæ.

DONWORTH, District Judge. On February 17, 1909, the Mission Fixture & Mantel Company made and delivered to Thomas S. Lippy its promissory note for $6,000, with interest at the rate of 8 per cent. per annum, and a chattel mortgage bearing the same date, covering its stock in trade. The consideration for the note and mortgage was the loan of $6,000 by Mr. Lippy to the company. While the record is not clear on the subject, it is assumed in the briefs on file that the loan was made contemporaneously with the delivery of the note and mortgage, and I shall make the same assumption. The mortgage was not recorded or filed in the county auditor's office until August 3, 1909. On the day following the filing of the mortgage these proceedings in bankruptcy were begun, and the mortgagor corporation adjudged bankrupt on its written admission and consent. The note and mortgage having been assigned to the Northwest Trust & Safe Deposit Company, that company has presented its verified proof, praying for their allowance as a secured claim. The referee, on the objection of the trustee, held the mortgage invalid, and allowed the claim as an unsecured claim only. On the petition of the trust company, the order of the referee is before the court for review.

In the objections of the trustee it is alleged:

"That during the period between the execution and delivery of said mortgage (on or about February 17, 1909) and the date of the filing and recording of the same, the entire property covered by said mortgage was in the sole possession of the bankrupt, and was in part sold by the bankrupt without the application of any of the proceeds thereof to the reduction of the mortgage debt; that a portion of the indebtedness proved in behalf of the creditors, as shown by proofs of debt on file herein, was incurred subsequent to the said February 17, 1909; that said mortgage was withheld from record for the purpose of maintaining the credit of said corporation."

These allegations are not denied by the trust company.

The legislation of the state of Washington concerning the recording or filing of chattel mortgages was, for many years, embodied in a section of the Code reading as follows:

"A mortgage of personal property is void as against creditors of the mortgagor or subsequent purchasers and incumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay or defraud creditors, and it is acknowledged and recorded in the same manner as is required by law in conveyance of real property." Ballinger's Ann. Codes & St. § 4558 (Pierce's Code, § 6531).

In 1899 the Legislature passed "An act relating to chattel mortgages and the filing thereof, and repealing all laws in conflict therewith," approved March 13, 1899 (Laws 1899, p. 157).

Section 2 of this act provides that:

"Every such instrument within ten days from the time of the execution thereof shall be filed in the office of the county auditor of the county in which the mortgaged property is situated."

And further provides that:

"Such instrument shall remain on file for the inspection of the public."

The only other sections of the act pertinent to the present subject are as follows:

"Sec. 3. Every mortgage filed and indexed in pursuance of this act shall be held and considered to be full and sufficient notice to all the world, of the existence and conditions thereof, but shall cease to be notice, as against creditors of the mortgagors and subsequent purchasers and mortgagees in good faith, after the expiration of the time such mortgage becomes due, unless before the expiration of two years after the time such mortgage becomes due, the mortgagee, his agent or attorney, shall make and file as aforesaid an affidavit setting forth the amount due upon the mortgage, which affidavit shall be annexed to the instrument to which it relates and the auditor shall endorse on said affidavit the time it was filed."

"Sec. 6. That a mortgage given to secure the sum of $300 or more exclusive of interest, costs and attorneys or counsel fees may be recorded and indexed with like force and effect as if this act had not been passed, but such mortgage or a copy thereof must be filed and indexed also as required by this act."

In the case of Mills, Trustee, v. Smith, 177 Fed. 652, the Circuit Court of Appeals of this circuit decided that the act of 1899 did not repeal the section of the Code above quoted and superseded it only to the extent that the provisions of the two enactments are in conflict.

It is urged by counsel for the trust company that the word "creditors," both in the Code and in the later act, must be construed as meaning only persons who become creditors during the period intervening between the execution of the mortgage and its filing in the recording office. The courts of Michigan and Kentucky have given this construction to statutes of similar import, holding that an unrecorded chattel mortgage is good as against prior creditors. Brown v. Brabb, 67 Mich. 17, 34 N. W. 403, 11 Am. St. Rep. 549; First National Bank v. Gunterman, 94 Mich. 125, 53 N. W. 919; Heenan v. Forest City Paint Co., 138 Mich. 548, 101 N. W. 806; Swafford's Administrator v. Asher (Ky.) 105 S. W. 164; Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205.

The United States District Courts sitting in those states have followed the construction of the statutes adopted by the state courts. In re Adams (D. C.) 97 Fed. 188; In re Ducker (D. C.) 133 Fed. 771.

In Willamette Casket Company v. Cross, 12 Wash. 190, 40 Pac. 729, the Supreme Court of Washington declined to decide whether withholding a mortgage from record would affect its validity as against prior creditors, for the reason that the question was not involved in the case.

In Blumauer v. Clock, 24 Wash. 596, 64 Pac. 844, 85 Am. St. Rep. 966, reference was made to the Michigan statute as being "a statute like ours"; but it was again unnecessary for the court to say whether or not it would follow the Michigan decisions on the point now under consideration. The court, however, did say:

"It is generally held that, where the statute does not restrict the word 'creditor,' the courts will not limit its application. A creditor and an in-

cumbrancer may stand in a dual capacity; for an incumbrancer must, at least, be a creditor, although a creditor need not necessarily be an incumbrancer. It seems to us that the more reasonable and just construction of the law would be to construe the term 'creditor' with reference to the inception of the obligation of the debtor, rather than to conditions which might afterwards arise." . ·

This language, I think, means that a person is to be deemed a creditor within the contemplation of the statute from the time when the debtor becomes obligated to him, and, if that is its meaning, an unrecorded mortgage is void as to one who holds an obligation against the mortgagor, though the inception of the obligation antedated the making of the mortgage.

The Court of Appeals of New York, in construing a similar statute, has reached a conclusion essentially different from that adopted by the courts of Michigan and Kentucky.

In Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073, the New York court says:

"It is claimed in behalf of the defendants that the word 'creditors,' in the act of 1833, only applies to a person whose debt originated after the execution of the mortgage, and during the default in filing, and that by the true construction of the act a mortgage of chattels is not void for an omission to file the same, as against a creditor whose debt antedated the execution of the mortgage, or, at least, that it is valid as against an antecedent creditor, provided it is filed before he acquired a lien upon the mortgaged property. It is to be observed that the limited meaning of the word 'creditors' in the act of 1833, insisted upon in behalf of the defendant, has no support in the literal reading of the act. The first section declares that a mortgage of chattels ·which shall not be accompanied by an immediate delivery, and an actual and continued change of possession, of the things mortgaged, 'shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the succeeding section of the act.' There is nothing in the language of the section confining the meaning of the word 'creditors,' or restricting its natural sense, or which indicates an intention to distinguish between a creditor who became such before, and one who became a creditor after, the execution of the mortgage. The section speaks of 'subsequent purchasers and mortgagees.' There was a very good reason for this, since a prior purchaser or mortgagee would stand on his paramount right, and needed no protection, or would have the means of protection, against a subsequent mortgagee. The use of the word 'subsequent,' as applied to purchasers or mortgagees, may not be of great importance in ascertaining the meaning of the word 'creditors'; but it indicates that the Legislature had in mind, and expressed, in respect to one class of persons to be protected by the statute, the time when their rights accrued with reference to the execution of the mortgage. * * * It is impossible to say that only creditors who became such during the existence of a mortgage may be injured by keeping the mortgage secret. It certainly is not improbable that in many cases antecedent creditors may be lulled into security and forbear the collection of their debts at maturity by the apparent unincumbered possession and ownership by the debtor of property covered by an undisclosed mortgage. The statute prescribes a general rule which must be observed in order to entitle a mortgagee to assert his lien as against creditors; and, although a creditor may have notice of an unfiled mortgage at the time the credit is given, yet it is held that as to a creditor with notice such a mortgage will be postponed to the lien of judgment and execution in his favor upon the debt so contracted."

This construction of the statute appears to me more reasonable, more in accordance with the views expressed by the Washington Supreme Court, and more likely to prevent frauds and evasions than the

construction adopted by the courts of Michigan and Kentucky. It naturally follows from the proposition, approved by the Washington Supreme Court, that, where the statute does not restrict the word "creditors," the courts will not limit its application.

The New York statute, like the Code section of this state, did not prescribe the time within which the recording must take place, and the court held that a reasonable time consistent with due diligence would be allowed. The Washington statute of 1899, however, expressly provides that:

"Every such instrument, within 10 days from the time of the execution thereof, shall be filed in the office of the county auditor."

This language must be given effect. It is contended by counsel for the trustee, as I understand them, that a mortgage not filed within the 10 days, though it may be filed subsequently, is absolutely null and void as to all creditors of every class, even as to persons who become creditors after the filing. Whether such construction is correct, it is not necessary now to decide. Whatever may be the effect of filing such a mortgage after the time limited, it seems clear that in order to make the mortgage binding on creditors of any class from the time of its execution it must be filed within the 10 days. Section 6 of the act, which provides that a mortgage for $300 or more may be recorded and indexed with like force and effect as if the act had not been passed, cannot aid the trust company's contention, because the same section further provides that such mortgage, or a copy thereof, must be filed and indexed as required by this act. It follows, therefore, that as the mortgage was not filed within the 10 days it could have no force or effect as to any creditor, whether prior or subsequent, until it was actually filed on August 3, 1909, the day before the filing of the petition in bankruptcy and the adjudication.

Here the bankruptcy law of the United States, the paramount legislation on the subject, comes into play. Assuming that the mortgage first took effect as to creditors on August 3d, it then took effect as a mortgage given to secure a pre-existing indebtedness. If the state statute correctly construed did not make it invalid as to all creditors at that time, the bankruptcy law avoids it as a preference. The giving of the mortgage originally was for a present consideration, and therefore did not constitute a preference. In my opinion, however, by the provisions of the state statute the mortgage had no validity as to creditors prior to its filing on the day before the bankruptcy adjudication, and, if under that statute it first became a lien as against creditors on that date, it constituted a preference just as if it was first written at that time. By section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), where the preference consists in a transfer, the period of four months for avoiding the preference does not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required.

The mortgage is, therefore, invalid as against the trustee and creditors generally, and the order of the referee is, accordingly, affirmed.