In the Matter of FEDERAL'S INC., a Michigan Corporation, Debtor.

Appeal of MATSUSHITA ELECTRIC CORPORATION OF AMERICA.

No. 75–2490.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 8, 1976.

Decided April 19, 1977.

Rehearing and Rehearing En Banc Denied June 14, 1977.

Robert N. Wienner, Katcher, Feldman & Wienner, James M. Wienner, Detroit, Mich., for appellant.

Herbert N. Weingarten, Hertzberg, Jacob & Weingarten, Detroit, Mich., for appellee.

Before WEICK and ENGEL, Circuit Judges and CECIL, Senior Circuit Judge.

ENGEL, Circuit Judge.

In this appeal we consider whether Section 2–702(2) of the Uniform Commercial Code, as enacted in Michigan, grants to a seller of goods a right of reclamation superior to the right of the insolvent buyer's trustee in bankruptcy and if so, whether that right must be invalidated as conflicting with Sections 64 and 67c(1)(A) of the Bankruptcy Act. 11 U.S.C. §§ 104 and 107c(1)(A). The questions raised have been the subject of frequent academic discussion[1] and at least one article has focused directly on the instant case.[2]

The facts were stipulated in the district court. On August 10, 1972 Matsushita Electric Corporation (Panasonic) delivered to Federal's, Inc. on credit electronic goods valued at approximately $64,000. On August 16, 1972 Federal's filed a petition under Chapter XI of the Bankruptcy Act and a receiver was appointed. Two days later, on August 18, 1972, Panasonic made timely demand, pursuant to Section 2–702(2) of the Uniform Commercial Code, M.C.L.A. § 440.-2702, for the return of the merchandise delivered to Federal's. It was stipulated that Federal's intended to pay for the goods at the time they were ordered and received.[3]

Upon these facts the district judge in a carefully considered opinion ruled in favor of the bankruptcy trustee on all issues, *In the Matter of Federal's, Inc.*, 402 F.Supp. 1357 (E.D.Mich.1975).

---

1. Countryman, *Buyers and Sellers of Goods in Bankruptcy*, 1 N.Mex.L.Rev. 435 (1971); Braucher, *Reclamation of Goods From a Fraudulent Buyer*, 65 Mich.L.Rev. 1281 (1967); Kennedy, *The Interest of a Reclaiming Seller under Article 2 of the Code*, 30 Business Lawyer 833 (1975); *Bankruptcy and Article Two Of The Uniform Commercial Code: The Right to Recover The Goods Upon Insolvency*, 79 Harv.L.Rev. 598 (1966).

2. Comment, *In Re Federal's, Inc.: A New Way For The Trustee In Bankruptcy To Defeat A Reclaiming Seller*, 35 U.Pitt.L.Rev. 922 (1974).

3. By agreement, the foregoing facts assume Federal's insolvency on the receipt of Panasonic's goods. It is understood, however, that since the judgment is reversed, remand will be required for a final determination of this issue.

## I. PANASONIC'S RIGHT OF RECLAMATION UNDER SECTION 2–702(2)

In seeking to reclaim its merchandise, Panasonic relies upon the right of reclamation granted by § 2–702(2) of the Uniform Commercial Code as enacted in Michigan, M.C.L.A. § 440.2702(2).[4]  In resisting that right, the trustee in bankruptcy first asserts that the status conferred upon him by § 70c of the Bankruptcy Act[5] makes him a "lien creditor" under § 2–702(3) to which Panasonic's rights are subordinate.

The district court recognized, as do we, that any resolution of the issue as it arises in this circuit must commence with our decision in *In re Mel Golde Shoes, Inc.*, 403 F.2d 658 (6th Cir. 1968).  In that case Johnston & Murphy Shoes delivered a shipment of merchandise to Mel Golde Shoes, only to find them subject to an attachment levied against Golde's inventory by one of Golde's creditors.  On February 2, Mel Golde filed a petition under Chapter XI of the Bankruptcy Act, but only after Johnston & Murphy, exercising the right of reclamation under § 2–702(2) as enacted in Kentucky, KRS § 355.2–702(2), made timely demand for the return of the merchandise.

On petition for review the district court ruled that under the Code, Johnston & Murphy possessed an unperfected security interest in the goods within the meaning of U.C.C. § 9–301 and that its right was therefore inferior to the rights of a lien creditor.  On appeal this court reversed and rejected the claim that a seller of goods under § 2–702(2) is to be treated as a creditor with an unperfected security interest.  Instead, we held that the rights of an unpaid seller under the Code are tantamount to those of a defrauded seller of goods under common law, a view consistent with the Official Comment to § 2–702 that the subsection "takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller".  *In re Mel Golde Shoes, supra*, at 660, quoting the Official Comment.  The question then was whether in Kentucky the rights of

---

4.  Section 440.2702 provides:

(1) Where the seller discovers the buyer to be *insolvent he may refuse delivery except* for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this article (section 2705).

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within 3 months before delivery the 10 day limitation does not apply.  Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this article (section 2403).  Successful reclamation of goods excludes all other remedies with respect to them.

5.  Section 70c provides:

(c) The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee.  The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.  If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subsection, it shall be valid to a like extent against the trustee.  In cases where repugnancy or inconsistency exists with reference to the rights and powers in this subdivision conferred, the trustee may elect which rights and powers to exercise with reference to a particular party, a particular remedy, or a particular transaction, without prejudice to his right to maintain a different position with reference to a different party, a different remedy, or a different transaction.

a defrauded seller of goods were superior to the rights of a lien creditor. Because we reasoned that the question was not resolved by any provision in the Kentucky Code, it was necessary to repair to the pre-Code common law of Kentucky. We concluded that Kentucky conformed to the general rule that a defrauded seller's right to reclaim his goods is superior to that of an attaching creditor.

▮ Despite some dissatisfaction expressed by the bankruptcy judge and the district court concerning the requirement of *Mel Golde* that the rights of a lien creditor are to be determined by reference to pre-Code state law, see *In the Matter of Federal's, supra,* at 1359 n. 1, we adhere to that view here. *See also, In re Kravitz,* 278 F.2d 820 (3rd Cir. 1960).

Michigan's enactment of § 2–702, like Kentucky's, does not provide any express guidance concerning the relative priorities of a seller under § 2–702(2) and the trustee of the bankrupt buyer.[6] As in *Mel Golde,* we are therefore put to the task of examining pre-existing Michigan law, of applying it to the extent we can ascertain it and making an educated determination of how Michigan courts would deal with the question to the extent it has not been precisely answered.

▮ The district court correctly observed that there are no reported cases in Michigan which involve the competing claims of a buyer's judicial lien creditor and a reclaiming defrauded seller. In a review of numerous early Michigan decisions, *Zucker v. Karpeles,* 88 Mich. 413, 50 N.W. 373 (1891); *Heenan v. Forest City Paint Co.,* 138 Mich. 548, 101 N.W. 806 (1904); *Hoffman v. Lake Shore & Michigan Southern R.R.,* 125 Mich. 201, 84 N.W. 55 (1900); *Cappon & Bertsch Leather Co. v. Preston National Bank,* 114 Mich. 263, 72 N.W. 180 (1897) and *Schloss v. Feltus,* 96 Mich. 619, 55 N.W. 1010 (1893), *aff'd on rehearing,* 103 Mich. 525, 61 N.W. 797 (1895), the district

court concluded that Michigan makes a distinction between lien creditors on the basis of whether the consideration for the lien was advanced before or after the seller had delivered the goods to the insolvent buyer. It concluded that at least to the extent that the consideration was advanced *after* the delivery of the goods, the rights of the lien creditor were superior to the rights of the reclaiming seller. This line of reasoning, however, required a further inquiry into whether the hypothetical lien creditor under § 70c is to be construed as one whose judgment is based upon a consideration which arose before or after the delivery of the goods. The crux of the district court's ruling is best illustrated in its own words:

> However, § 70c does not specify when this hypothetical creditor must have extended to the bankrupt the credit which his lien secures. In *Constance v. Harvey,* 215 F.2d 571 (2nd Cir. 1954), cert. denied 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716 (1955), it was held that the trustee could step into the gap between the creation and perfection of a chattel mortgage and thus defeat the mortgagee even if the mortgage had been filed and perfected prior to the date of bankruptcy. But in *In Re Alikasovich,* 275 F.2d 454 (6th Cir. 1960) the Sixth Circuit disagreed with the reasoning of *Constance v. Harvey* and held that the hypothetical lien creditor must be viewed to have extended the credit and secured his lien as of the date of the filing of the petition in bankruptcy. On appeal to the Supreme Court the Sixth Circuit's decision in *Alikasovich* was upheld and *Constance v. Harvey* was specifically overruled *sub nom Lewis v. Manufacturers National Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

> In this case Federal's petition in bankruptcy was filed before Panasonic's demand and thus the *Lewis* decision makes it clear that the receiver must be viewed as an "intervening" lien creditor, i. e. one

---

6. For the definition of "lien creditor" one is directed by the Official U.C.C. Comment to § 2–702 to the provisions of § 9–301(3) of the Code, M.C.L.A. § 440.9301. That subsection

defines "lien creditor" to include, *inter alia,* "a trustee in bankruptcy from the date of the filing of the petition."

who extended credit and secured his lien between delivery and demand for reclamation. Because this Court has determined that the Michigan courts would have found an intervening lien creditor to have rights and equities superior to those of a reclaiming seller, Panasonic's reclamation petition in bankruptcy must be denied.

*Matter of Federal's, Inc.*, 402 F.Supp. at 1362–3. Although the district court's holding on this point has a certain consistency, we conclude upon reflection that it is in error in two respects.

### A. ASSUMED EXTENSION OF CREDIT UNDER § 70c.

To endow the hypothetical creditor under § 70c with a priority based upon an imagined superior quality of the underlying indebtedness reads more into the language of *Lewis v. Manufacturer's National Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), than was intended. The Bankruptcy Act merely premises the existence of a creditor who has obtained a lien by legal or equitable proceedings upon the property of the bankrupt. It does not endeavor to spell out either the kind or quality of debt which formed the basis for the lien. In this respect we think the district court erred much as did the court in *Constance v. Harvey*, 215 F.2d 571 (2d Cir. 1954), *cert. denied*, 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716, by seeking to establish a sort of hypothetical super creditor. Such an approach is inconsistent with the holding in our circuit that "A Trustee in Bankruptcy acquires title to the assets of a bankrupt by operation of the law. He is not an innocent purchaser for value but takes title to the bankrupt's property subject to all liens, claims and equities thereon. He has the lien of an execution creditor, which is about the lowest form of security." *In re Richards*, 455 F.2d 281, 284 (6th Cir. 1972). *In re Clemens*, 472 F.2d 939 (6th Cir. 1972); *In re Alikasovich*, 275 F.2d

454 (6th Cir. 1960); *In re Troy*, 490 F.2d 1061 (6th Cir. 1974); *In re Easy Living, Inc.*, 407 F.2d 142 (6th Cir. 1969).

In *Constance v. Harvey, supra*, a trustee in New York was permitted under § 70c to assume the position of a hypothetical creditor who extended credit to the bankrupt in the brief interval of time between the execution of a chattel mortgage and the date of its recording although the mortgage had in fact been recorded by the time of bankruptcy.[7] However, in *Alikasovich, supra*, our circuit took a different view. Holding that the trustee was vested with the rights of a lien creditor as of the date of bankruptcy, we cautioned that the trustee's rights under § 70c, should not be confused with his rights under § 70e, rights which are entirely derivative and dependent upon the existence of an actual creditor against whom the transfer might have been invalidated in the absence of bankruptcy. *In re Alikasovich, supra*, at 456–7. The Supreme Court agreed and affirmed:

> We think that one consistent theory underlies the several versions of § 70c which we have set forth, *viz.*, that the rights of creditors—whether they are existing or hypothetical—to which the trustee succeeds are to be ascertained as of "the date of bankruptcy," not at an anterior point of time. That is to say, the trustee acquired the status of a creditor as of the time when the petition in bankruptcy is filed. We read the statutory words "the rights . . . of a creditor [existing or hypothetical] then holding a lien" to refer to that date.

This construction seems to us to fit the scheme of the Act. Section 70e enables the trustee to set aside fraudulent transfers which creditors having provable claims could void. The construction of § 70c which petitioner urges would give the trustee power to set aside transactions which no creditor could void and which injured no creditor. That con-

---

7. The factual context of *Constance v. Harvey* would not now arise in New York. Since the adoption of the Code, a simple contract credi-

tor cannot assert priority over an unperfected security interest. U.C.C. § 9–301.

struction would enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy.

*Lewis v. Manufacturers National Bank, supra,* 364 U.S. at 607–609, 81 S.Ct. at 349–350.

Under *Lewis* and by the terms of the statute, the lien creditor is deemed to have acquired that status "as of 'the date of bankruptcy'." It does not follow, however, that the underlying debt which may have furnished the basis for the hypothetical lien must also have been created precisely at that time, or at any other particular time. The prohibition in *Lewis* of the imaginary extension of credit at a *definite* time that accords a substantive right prior to the date of bankruptcy should not be construed as affecting the basic assumption that a trustee's lien is based on antecedent debt extended an *indeterminate* time prior to the date of bankruptcy.

Before the Supreme Court decision in *Lewis* obviated the problem, the National Bankruptcy Conference in 1956 sought to overrule the doctrine of *Constance v. Harvey* by amending § 70c. "The proposal proceed[ed] on the premise that the trustee is not to be deemed to have extended credit at *any particular time* before bankruptcy . . . ." 4A *Collier* § 70.51, p. 626 (emphasis added). *Collier* continues in footnote 40: "While [the proposal] arguably permitted the trustee to assume the position of a creditor who extends credit at the same instant he obtains a lien by judicial proceedings, the purpose of the proposal to override the implications of the doctrine of *Constance v. Harvey* is plain enough, and it should not be necessary to negative an inference resting on such an anomaly as that of a simultaneous extension of credit and attachment of a lien through judicial proceedings."

Professor Kennedy in *The Interest of a Reclaiming Seller under Article 2 of the Code,* 30 Business Lawyer 833 (1975) criticizes the Third Circuit's "questionable construction of section 70c" in *In re Kravitz,*

278 F.2d 820 (1960). The court in *Kravitz* held, *inter alia,* that the trustee in bankruptcy under § 70c can be assumed to be a creditor who extended credit subsequent to the delivery of goods. Professor Kennedy noted that "the court in the *Kravitz* case allowed the trustee to assume the anomalous position of a creditor who extended credit and simultaneously obtained a lien by judicial proceedings at the instant of bankruptcy."

■ We think, then, that the powers and rights of the hypothetical lien creditor under § 70c are just what the statute says they are, no more and no less. They are the powers of a creditor who obtains a lien upon the property of the debtor by legal or equitable proceedings at the date of bankruptcy, but they in no way elevate that status by any particular reference to the chronology of the underlying debt.

The contrary view would endow the trustee with almost all of the qualities of a bona fide purchaser or mortgagee for present value. This runs afoul not only of the intent and meaning of *Lewis* but of our own characterization of the trustee as "about the lowest form of creditor."

As the Supreme Court in *Lewis* observed:

That is too great a wrench for us to give the bankruptcy system, absent a plain indication from Congress which is lacking here.

*Lewis, supra,* 364 U.S. at 610, 81 S.Ct. at 351.

## B. PRIORITY UNDER MICHIGAN LAW

Even if the trustee is assumed to have extended credit subsequent to the delivery of the goods to the insolvent buyer, it would still be necessary to decide whether under Michigan law the trustee then would prevail over the defrauded seller. Once again we disagree with the district court in its analysis of the problem. While it is true that the cases cited by the district court indicate that the rights of a defrauded ven-

dor may be inferior to those of a chattel mortgagee who without notice obtained his mortgage for present value from the purchaser,[8] nevertheless it is significant that, with the possible exception of *Hoffman v. Lake Shore & Michigan Southern R.R., supra,* each case involved not a judicial lien, but rather a consensual lien granted by the bankrupt to one who, without knowledge of the rights of the defrauded seller, had advanced present consideration. However, § 70c requires us to look to the assumed powers of the trustee based on liens obtained by legal proceedings, not liens obtained consensually.

■ The common law of Michigan is generally that an execution sale passes only whatever title the judgment debtor had in the property.[9] In *French v. DeBow,* 38 Mich. 708, 712 (1878), the court held that a levy of execution did not "give to the creditor any rights analogous to those of a bona fide purchaser  .  .  .  The creditor, when he makes sale on his execution and becomes the purchaser, may thereby acquire new equities; but until that time he stands in the rights of his debtor and the levy may be defeated by equities which the debtor is unable to resist." *See also, Campbell v. Keys,* 130 Mich. 127, 89 N.W. 720 (1902); *Uhl v. Weiden,* 122 Mich. 638, 81 N.W. 571 (1900).

This rule has been observed in the decisions of our circuit noting the scope of a trustee's power in the State of Michigan. In *In re Toms,* 101 F.2d 617, 619 (6th Cir. 1939), we held that

> The trustee takes such property not as an innocent purchaser but subject to all valid claims, liens and equities enforceable against the bankrupt, except in cases where there has been a conveyance or encumbrance which is void or voidable as

to the trustee by some positive provision of the Bankruptcy Act.

More specifically, the court stated:

> Appellant's rights in the property must be determined according to such supplementary proceedings as may be had under the laws of Michigan after the return of an execution unsatisfied. Under the law prevailing in that state, proceedings supplementary to an execution will not defeat the equitable claims against property held in good faith by the claimant.

*See also, Elbro Knitting Mills v. Schwartz,* 30 F.2d 10 (6th Cir. 1929).

## II.  ENFORCEABILITY OF U.C.C. § 2–702 UNDER THE BANKRUPTCY ACT

While Federal's receiver places principal reliance upon his claim that a reclaiming seller's rights under UCC § 2–702 are subordinate to those of the receiver in bankruptcy, it is additionally claimed that, to the extent that those rights are deemed superior, the Code conflicts with the Bankruptcy Act and is unenforceable. Two grounds for this position are stated. First, the receiver claims that the Code is invalid because it creates a statutory lien which first becomes effective upon the insolvency of the debtor and hence is expressly invalidated under § 67c(1)(A) of the Bankruptcy Act, 11 U.S.C. § 107c(1)(A). Second, it is claimed that the Code provision is a disguised, state-created priority which is in conflict with those priorities established in § 64 of the Bankruptcy Act.

The view of the receiver was adopted by the district court below and indeed has received the support of numerous legal writers. See, *Matter of Telemart Enterprises, Inc.,* 524 F.2d 761, 763 (9th Cir. 1975). However, upon consideration, we adopt a contrary view and agree with the result

---

8. *See e.g., Zucker v. Karpeles,* 88 Mich. 413, 50 N.W. 373 (1891); *Heenan v. Forest City Paint Co.,* 138 Mich. 548, 101 N.W. 806 (1904); *Hoffman v. Lake Shore & Michigan Southern R.R.,* 125 Mich. 201, 84 N.W. 55 (1900); *Cappon & Bertsch Leather Co. v. Preston National Bank,* 114 Mich. 263, 72 N.W. 180 (1897).

9. The common law, of course, is modified by statute in certain particulars. A filed execution lien is protected against prior unrecorded grantees and mortgagees of which the lienor had no notice. M.C.L.A. § 600.6051(1). A creditor who possesses a lien on personal property prevails over an unperfected security interest. M.C.L.A. § 440.9301(1)(b).

reached by the Ninth Circuit in *Matter of Telemart, supra.*

## A. THE STATUTORY LIEN

Section 67c(1)(A) provides:

The following liens shall be invalid against the trustee: (A) Every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor.

A statutory lien is defined in § 1(29a), 11 U.S.C. § 1(29a), as

a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute and whether or not the agreement is made fully effective by statute.

Historically the development of § 67c of the Bankruptcy Act represents an attempt by the Congress to invalidate spurious statutory liens created by state law which were in reality merely disguised priorities whose effect was to distort the federally ordered scheme of distribution contemplated by the Bankruptcy Act. S.Rep.No.1159, 89th Cong. 2d Sess., 1966 U.S.Code Cong. & Ad. News, pp. 2456–7. As observed in *Telemart, supra,* resolution of the instant question involves consideration of two congressional policies which are inherently contradictory. In enacting § 67c and § 64 of the Bankruptcy Act, Congress was primarily concerned in assuring an equitable distribution of the bankrupt's assets, an objective which, in its ideal state at least, would be accomplished by giving each creditor a pro rata share of the estate. At the same time, Congress has consistently maintained a policy of recognizing valid state property interests by vesting in the trustee under § 70a only property to which the bankrupt possesses title. 11 U.S.C. § 110a. *See generally, Telemart, supra,* at 763. We are thus faced with the question of whether Panasonic's interest in the merchandise sold to Federal's is a valid state property interest and so recognized in considering the extent of the bankrupt's title to the property under § 70a, or whether it is an invalid lien under § 67c.

We have previously held in *In re Mel Golde, supra,* that the rights of an unpaid seller of goods under § 2–702 are tantamount to those available to a defrauded seller under common law. However, we must agree with the district court's observation that § 2–702 is more than a mere codification of common law.[10] Nevertheless, we are persuaded that the right asserted by the seller under § 2–702(2) is a valid state-created right of ownership. Because that right conceptually has its antecedents in the historical and equitable right of a defrauded seller to reclaim the goods he has sold to an insolvent buyer, we hold it cannot be said to arise "*solely* by force of statute" under § 1(29). (emphasis added).[11]

We conclude that the right of reclamation under § 2–702(2) is not the kind of lien which Congress intended to invalidate by § 67c(1)(A). We note the total lack of reference to § 2–702 in the legislative history of the 1966 amendments. So extensive a provision of state law would hardly escape

10. The district court contrasted the right of reclamation granted by § 2–702 with that existing prior to the adoption of the Code in Michigan.

The common law of Michigan allowed rescission for fraud only in cases of intentional misrepresentation and receipt of goods by an insolvent without the intention to pay for them . . . . An insolvent buyer's mere failure to disclose his insolvency to the seller did not constitute actionable fraud.
*Matter of Federal's, Inc.,* 402 F.Supp. at 1364.

11. Two cases cited by the bankruptcy judge are distinguishable on this ground. *In re Trahan,* 283 F.Supp. 620, *aff'd,* 402 F.2d 796 (5th Cir. 1968), *cert. denied,* 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459; *In re Nieves,* 446 F.2d 188 (1st Cir. 1971). Both challenged statutes arose in the context of civil code jurisdictions that are without common law foundations. We note the fact that a statute modifies its common law antecedent may not be as important as the fact that it *has* a common law antecedent.

notice if it were one of the legitimate targets of the amendment.[12] We attribute this absence of reference not to oversight, but to the more likely explanation that the Congress viewed the Code provision as did its authors: a basic updating of the equitable remedies of rescission.

The development of the Uniform Commercial Code, and its universal acceptance marks this provision as anything but spurious. The Code represents the combined empirical judgment of 49 states of the Union that the irrebuttable presumption of fraud in § 2–702(2) conforms to the experience in the majority of cases. While we should not flinch from upholding the primacy of the Bankruptcy Act if it is otherwise demanded, a construction of the Act which would invalidate the application of the U.C.C. must at least give pause. The Code is far more than a spurious state law created by special interests for their own special protection. As pointed out by Judge Friendly in *United States v. Wegematic Corp.*, 360 F.2d 674, 676 (2d Cir. 1966), the Code was, even in 1966, "well on its way to becoming a truly national law of commerce . . . ."

Likewise, we are undisturbed by the argument that under equitable principles in most jurisdictions, rescission was not available unless it was shown that the defrauding buyer did not intend to pay for the goods, an element absent here by stipulation of fact. Observation of traditional equity principles does not require, however, a blind adherence to an immutable rule. Quite the contrary, we see in the Code provision an adaptation of the historical equitable remedy to modern commercial life. Faced with an expanding commercial community, state legislatures have recognized that contractual relations now require more certainty. By fixed rules, of uniform applicability, citizens are able to deal with one another more reliably and with greater dispatch. Thus

proof of intent not to pay, always difficult to establish, is eliminated. Also the "reasonable time" for rescission under common law, which might vary greatly according to the equities of a particular case, is made certain by the flat imposition of a ten-day period.

The result, therefore, of the Code is not so much a multiplication of grounds on which a seller may rescind a sale, cf. *Telemart, supra*, at 766, as it is the achievement of certainty and reliability in the determination of rights. While the insolvent buyer (and thus his receiver or trustee) may face a greater risk of loss of the purchased goods where timely demand is made within the period, the right to retain them is more certain than under the common law where no demand is made within ten days and where there has been no express written misrepresentation of solvency. The Code thereby confers certain benefits upon the bankrupt estate by allowing the receiver more promptly to ascertain the rights of the bankrupt and in eliminating sources of litigation. Further, section 702(3) by providing that successful reclamation specifically excludes all other remedies, insures that the result is both predictable and final.

## B. DISGUISED STATE PRIORITY

■ Appellee argues that even if § 2–702 is not a statutory lien under § 67c, it nevertheless is a disguised state created priority which conflicts with § 64. In our view, both § 64 and § 67c of the Bankruptcy Act represent an effort by Congress to eliminate state law priorities which interfered with the distributional scheme of the Bankruptcy Act embodied in § 64. Most of the considerations, therefore, which we have found controlling in overruling § 67c objections have similar validity when applied separately to the question of whether the priorities established in § 64 are distorted or

---

12. The Uniform Commercial Code had become effective in 37 states prior to the enactment of the 1966 amendments to the Bankruptcy Act. Indeed, Congress itself had adopted the Code for the District of Columbia on December 30, 1963, Pub.L.No. 243; 77 Stat. 630, and specifi-

cally the right of reclamation under § 2–702(2); D.C.Code, § 28:2–702(2). The same period of time which saw consideration and adoption by Congress of the 1966 amendments was also a period of intense state activity in promulgating the Uniform Commercial Code.

defeated by respecting a defrauded seller's rights to reclamation under UCC § 2–702.

Contrary to the view of the Ninth Circuit in *Telemart, supra*, at 765, we do not view § 2–702 as either indistinguishable from or the exact equivalent of the common law remedy of rescission. Nevertheless we agree that the rights reserved to the defrauded seller under that section are the direct descendents of those historically preserved under the common law and so respected by the Bankruptcy Act. They are rights with respect to *particular* goods and in which the purchaser's title was historically voidable. In contrast, a priority within the meaning of the Bankruptcy Act contemplates a claim which is satisfied from the *general assets* of the bankrupt's estate and is asserted after the satisfaction of secured liens but before the debts of general creditors. *Telemart, supra; Elliott v. Bumb*, 356 F.2d 740 (9th Cir. 1966), *cert. denied* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66; 3A *Collier* § 64.02. A priority in bankruptcy should not depend for its existence upon the contingency of whether specific assets are within the bankrupt's estate. While the district court rejected this distinction because "[i]f reclamation is permitted in bankruptcy it will reduce the bankrupt's estate at the obvious expense of all the unsecured creditors . . . ", *Federal's, supra*, at 1366, the logic is unpersuasive. The best response is that of Judge Blackmun in *O'Rieley v. Endicott-Johnson Corp.*, 297 F.2d 1, 9 (8th Cir. 1961) wherein the court upheld a pre-Code seller's petition for reclamation of goods sold to the bankrupt:

> While we realize that a decision in favor of Endicott has the practical effect, as pointed out by the Trustee in its argument, of favoring one creditor over the general creditors, this is necessarily true of any successful reclamation petition. It would be unjust to permit general creditors to benefit at the expense of one whose assets come into a bankrupt's possession under conditions which warrant rescission.

Reversed and remanded for further proceedings consistent herewith.