ACTION INDUSTRIES, INC. (DOLLARAMA), Plaintiff,

v.

DIXIE ENTERPRISES, INC., Debtor-in-Possession, Provident Bank of Cincinnati, First National Bank of Dayton, Defendants.

In the Matter of DIXIE ENTERPRISES, INC., Debtor.

Adv. No. 3–82–0078.
Bankruptcy No. 3–81–02812.

United States Bankruptcy Court, S. D. Ohio, W. D.

Aug. 31, 1982.

Ira Rubin, Dayton, Ohio, for debtor.

Garry O'Donnell, Peter Donahue, Dayton, Ohio, for plaintiff.

Walter Reynolds, William Smith, Dayton, Ohio, for First National Bank.

Don R. Gardner, Cincinnati, Ohio, for Provident Bank.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

Debtor, Dixie Enterprises, Inc. (Dixie), is an Ohio Corporation doing business as a retailer of various hard goods and other merchandise at retail from various stores. For several years Dixie had purchased some of its inventory from Action Industries, Inc. (Action) on open credit account, with a balance owing of $114,810.29 on 24 September 1981.

In the ordinary course of business Dixie received a delivery of ordered merchandise on account at $40,376.60 on 24 September 1981. On 5 October 1981, Dixie disclosed to Action it was insolvent. On the same day Action by a mailgram demanded return of the merchandise.

On 6 October 1981 Dixie filed a voluntary petition for relief seeking reorganization under Chapter 11 of the Bankruptcy Code.

Prior to the delivery by Action, The Provident Bank (Provident) as Dixie's major inventory financer has held the first and best perfected security interest since September 1973 in Dixie's present and afteracquired inventory, equipment, accounts, fixtures, contract rights, general intangibles and all proceeds thereof.

By application and court order entered on 3 December 1981 Dixie was duly authorized as Debtor-in-Possession to borrow pursuant to 11 U.S.C. § 364(c)(2), (3) up to $650,000.00 from Provident for the purpose of purchasing merchandise in the continued operation of its business, secured by a continuing security interest and a first priority over all administrative expenses.

On 16 February 1982 Action filed in the bankruptcy court a complaint for reclamation of the merchandise delivered to Dixie on 24 September 1981.

On 30 April 1982 the Official Creditors' Committee filed action for appointment of a Trustee or conversion to a case under Chapter 7 of the Bankruptcy Code. On 2 August 1982 an order converting to Chapter 7 was filed by the Court.

This matter is now before the Court upon motions to dismiss by Dixie, Provident, and The First National Bank (as participating Bank). By stipulation the time for filing briefs was extended until 18 June 1982 for Action to file a response memorandum.

### I

Initially, before reaching the questions as to validity and priority of the respective interests claimed, a question has been raised as to the timeliness of notice of reclamation given by Action to Dixie on 5 October 1981.

In the case at bar, the Debtor received the goods on Thursday, September 24, 1981. This was a credit transaction. On October 5, 1981 the Debtor informed the Seller that it was insolvent. Upon receipt of such information Action sent a mailgram, dated October 5, 1981, of intent to reclaim the goods. None of the above stated facts are in dispute. However, as to whether the Seller has properly reclaimed goods in the Debtor's possession within 10 days of receipt of such goods by the Debtor is hotly contested. Action claims that according to Rule 6(a) of the Federal Rule of Civil Procedure its written demand for reclamation was timely. According to Action's theory counting from September 25th, the 10th day inclusive is Sunday, October 4, 1981; and because the 10th day falls on a Sunday, the demand period runs until the end of the next day which is not a Saturday or Sunday. Action then concludes that because written demand was on Monday, October 5, 1981 its demand for reclamation was within the prescribed time period. See 11 U.S.C. § 546(c).

The defendants argue that if the days between September 24, 1981 and October 5, 1981 are counted, without including September 24, then the ten day period provided for expired on October 4, 1981; and therefore demand for reclamation was made on the eleventh day, which does not comply with the statute and thus no relief can be granted.

The proper methods of computing periods of time remains an open question. See 74

Am. Jur. 2d, Time § 15 at 599. Rule 6(a) of the Federal Rules of Civil Procedure (B.R.P. 906(a)) does not provide a general rule of statutory construction. The Advisory Committee suggests B.R.P. Rule 906(a) should apply by analogy to the Uniform Commercial Code. See Comment to B.R.P. 906(a) in Collier Pamphlet Edition, Part II, Bankruptcy Rules (1981). Also 2 Moore's Federal Practice ¶ 6.06[1] states "in the absence of a contrary and controlling rule of construction, . . . justice will be served by applying the principle of Rule 6(a) of the F.R.C.P. [B.R.P. 906(a)] by analogy." It may be noteworthy that Section 31 of the Bankruptcy Act excluded the first day and included the last. *In re Behring,* 5 U.C.C. Rep. Serv. 600 (N.D. Tex. 1968). Ohio Revised Code Section 1.14 states, in pertinent part, that the "first day is excluded and the last day is included in computing time; except that when the last day falls on Sunday, then the act may be done on the next succeeding day which is not a Sunday." The rule found in this section providing how time shall be computed, applies to any "act required by the law" to be performed. O.R.C. § 1.14.

■ Also as a general rule, where an act is required to be done a specified number of days "before" an event, the required number of days is to be computed by excluding the day on which the act is done and including the day on which the event is to occur. 74 Am.Jur.2d Time § 24 and Note 5.

■ It is the conclusion of this Court that it is appropriate, under the facts as given, and all of the cited provisions of law applicable, to begin counting from September 25, 1981, inclusive, the 10th day would be October 4, 1981. Since the 10th day falls on a Sunday the demand period runs "until the end of the next day which is not a Sunday." O.R.C. § 1.14. The reclamation notice being timely, the more crucial questions raised must be addressed.

1. See S. Rep. No. 95–989, 95th Cong. 2d Sess. 86: H.R. Rep. No. 95–595, 95th Cong. 1st Sess.

## II

The motions to dismiss raise the question of whether or not Action would be entitled to any relief under any state of facts which can be proved in support of its complaint. If there is any legal basis for recovery, obviously the motions in their many details must be forestalled 'pending submission of evidence.

It is initially important to note that 11 U.S.C. § 546(c) and the stated legislative purpose underlying this provision to recognize the applicability to a degree of the Uniform Commercial Code § 2–702 (O.R.C. § 1302.76) in the context of bankruptcy proceedings [1] does not bear the thrust of all relief requested by Action.

Under the "strong arm" effect of Section 70c of the Bankruptcy Act giving the trustee the status of a judicial lien creditor, the attempted reclamation by a seller would be defeated by the trustee in bankruptcy. Under the decisions of nearly all states prior to enactment of the Uniform Commercial Code (UCC) however, the lien creditor was subject to the rights of a reclaiming seller asserting fraud, even as against an intervening trustee in bankruptcy ("the ideal lien creditor"). Respected authority then precipitated endless dialogue in commercial circles by holding, in effect, that the common law theories no longer prevail because the answer lies in the Uniform Commercial Code. See *In re Kravitz,* 278 F.2d 820 (3d Cir. 1960).

The Permanent Editorial Board for the Uniform Commercial Code then drafted and promoted a change in Section 2–702(3) deleting "or lien creditor" for the purported purpose of uniformity among the states. The legislature of Ohio has not adopted the proposed change (O.R.C. § 1302.76). The Court of Appeals for the Sixth Circuit, nevertheless, has declined to follow the conclusion of *In re Kravitz,* rather looking to Kentucky and Michigan common law, which have the same 1962 version of U.C.C. § 2–702 as Ohio (O.R.C. § 1302.76, never having adopted the 1966 amendment omit-

372, U.S. Code Cong. & Admin. News 1978, p. 5787.

ting "lien creditor"). See *In re Mel Golde Shoes, Inc.*, 403 F.2d 658 (6th Cir. 1968) and *Matter of Federals, Inc.*, 553 F.2d 509 (6th Cir. 1977).

■ This brief background resume ´is important, to understand that 11 U.S.C. § 546(c)[2] does not affect the rights of parties claiming an interest other than the lien rights of a trustee in bankruptcy (and debtor-in-possession). State law is still pertinent as to other lien creditors. §§ 1302.76 Ohio Revised Code.[3]

If there were no other lienholders, and the goods in question were still in possession of the Debtor-in-Possession (no good faith purchasers) the right of Action to reclaim could be determined strictly according to the teaching of *In re Mel Golde Shoes, Inc.*, 403 F.2d 658 (6th Cir. 1968). That decision, however, involved the right to reclaim goods and did not involve proceeds of sales. The case does hold that a defrauded seller's reclamation rights are superior to the rights of attaching creditors on the basis of the common law (in Kentucky).

■ Hence, Provident Bank's security interest is not affected by the rights of Ac-tion derived from 11 U.S.C. § 546. Section 1302.76 O.R.C. expressly protects good faith purchasers or secured parties. Provident by statutory definition qualified as both. O.R.C. §§ 1301.01(FF), (GG)[4] (U.C.C. 1–201).

In addition to its pre-Chapter 11 "floating lien," Provident's interest is protected by the Cash Collateral Order entered on 6 October 1981, which grants "priority over any and all administrative expenses," conformably to Section 364(c) and 507(b) of the Code, "and a continuing security interest."

■ A right to reclamation is literally an *in rem* right. It must be implemented by immediate possession. Section 546 must and can be invoked only by adversarial process in the bankruptcy court because of the automatic stay of 11 U.S.C. § 362. The rights must be invoked prior to disposition of the property to "good faith purchasers or lien creditors." Neither state law nor Section 546 grants any lien or security interest to the seller. The only right afforded is that of common law to a defrauded seller to reclaim. Section 2–702(2) of the Uniform Commercial Code and Section 546 of the

---

**2.** (c) The rights and powers of the trustee under sections 544(a), 545, 547 and 549 of this title are subject to any statutory right or common law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—
(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and
(2) the court may deny reclamation to a seller with such a right of reclamation that has made a demand only if court—
(A) grants the claim of such a seller priority as an administrative expense; or
(B) secured such claim by a lien

**3.** § 1302.76 (UCC 2–702) Seller's remedies on discovery of buyer's insolvency.
(A) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment of all goods theretofore delivered under the contract, and stop delivery under section 1302.79 of the Revised Code.

(B) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this division the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.
(C) The seller's right to reclaim under division (B) of this section is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under section 1302.44 of the Revised Code. Successful reclamation of goods excludes all other remedies with respect to them.

**4.** R.C. § 1302.76 (FF) provides 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, *lien,* issue or reissue, gift, or *any other voluntary transaction creating an interest in property.* [emphasis added]

Bankruptcy Code in effect limit the common law rights rather than expand upon them. See *Matter of Federal's Inc.*, 553 F.2d 509 (6th Cir. 1977). *In re Mel Golde Shoes, Inc.*, 403 F.2d 658 (6th Cir. 1968), and *Matter of Blazon Flexible Flyers, Inc.*, 407 F.Supp. 861 (D.C. Ohio 1976).

It is important to note that the proper procedure to implement the Uniform Commercial Code in all of the cited case precedents was a reclamation action in the bankruptcy court with jurisdiction over the *res, while still intact and in custodia legis.*

To pursue either "any statutory right or common law right of a seller" to reclaim goods, 11 U.S.C. § 546(c) mandates such a timely action in the bankruptcy court. Obviously the bankruptcy court can neither grant reclamation nor "deny reclamation to a seller with such a right of reclamation" by granting the seller an administrative priority or a lien unless jurisdiction has been invoked timely.

■ The business being conducted by the debtor-in-possession as a court fiduciary was a very extensive and involved retail operation with many departments and innumerable suppliers. Yet Action not only stood by while goods of suppliers were commingled and sold in the ordinary course of the business, but waited to reclaim possession from 6 October 1981 (petition for relief under Chapter 11) until 16 February 1982 when court jurisdiction was properly invoked. Even more critical, the goods now sought by reclamation had been delivered on September 24, 1981 and had long since being sold in the regular course of retail sales.

There is insufficient evidence to determine whether the specific goods may have been sold in the ordinary course of business for an amount in excess of the security interests of Provident, and the participating First National Bank. Even though we hold that there is now no longer any possibility of reclamation because of the non-existence of the *res* and that Action has no remedy

under § 546(c) for administrative priority, the complaint should be dismissed only as to the Banks.

■ A complaint may be dismissed on motion if it is clearly without any merit and it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which can be proven. See *Moore's Federal Practice* (2d ed.) ¶ 12.08. If *Action* can establish that there are excess funds derived from the sale of the goods over and above payment of the valid security interest and that the debtor-in-possession committed actual fraud and conversion, there may be further remedies available under the equity jurisdiction of the bankruptcy court.

Otherwise, there is no legal basis for the alternate remedy sought (converting to an administrative priority) and Action is an unsecured creditor. To grant recovery to Action from property not derived from the specific proceeds of sale would deplete the other estate property and constitute a preference over the other unsecured creditors entitled to a *pro rata* distribution.

The motion to dismiss as to the Debtor-in-Possession must be held under advisement for the submission of additional evidence, if any, as to rights which may exist not derived from the statutes and case precedents as cited. Available evidence to clarify the response of the Debtor-in-Possession, as court fiduciary, to the notice of intent to reclaim may be submitted. When the notice was received was the shipment still intact, or was it irretrievably mingled with the general inventory? What accounting methods were employed? What accounting was made of the proceeds, and the amount of the total gross receipts? How much, if any, of the total shipment was still unsold in the ordinary course of business when the bankruptcy court jurisdiction was invoked by Action to effect repossession?

■ The following conclusions from the facts are reached, namely:

1. Under both the common law of Ohio and Uniform Commercial Code § 2–

702 (1302.76 O.R.C.) as further implemented by 11 U.S.C. § 546(c), a seller is granted only a right to reclamation, a physical act to be implemented by repossession of specific property sold.

2. The rights to reclamation or alternative relief afforded to a seller by 11 U.S.C. § 546(c) can only be implemented by invoking the jurisdiction of the bankruptcy court, and the 10-day notice requirements under both the Uniform Commercial Code and the Bankruptcy Code merely preserve the right to invoke court jurisdiction.

3. If the bankruptcy court jurisdiction is timely invoked before disposition of the *res* in the ordinary course of business to "good faith purchasers or lien holders," the right of reclamation precludes attachment of both floating liens and the rights and powers of a trustee in bankruptcy, unless the court denies reclamation with alternative statutory relief under § 546(c).

4. The motions to dismiss Provident and First National Bank as parties defendant should be granted.

5. The motion to dismiss the Debtor-in-Possession should be denied, for the purpose of the submission of an amended complaint and further evidence, if any, by Action as to rights in the *res* not derived from statute and which establishes actual fraud or intentional conversion of any proceeds of sale in excess of Provident's interest. Such action must be prosecuted within 30 days, or the complaint dismissed as to the Debtor-in-Possession.