**MONTELLO OIL CORP., Plaintiff,**

v.

**MARIN MOTOR OIL, INC., et al., Defendants.**

Civ. A. No.. 82–4269.

United States District Court, D. New Jersey.

June 10, 1983.

Stein, Joseph & Rosen by Ms. Judith Joseph, Fort Lee, N.J., Ring & Rudnick by Leslie H. Rudnick, Boston, Mass., for plaintiff.

Ravin, Greenberg & Zackin, P.A. by Jack M. Zackin, Roseland, N.J., for defendant Michaels.

Mattson, Madden & Polito by Andrew S. Polito, Newark, N.J., for defendant Cities Service Co.

## OPINION

CLARKSON S. FISHER, Chief Judge.

On July 19, 1981, Montello Oil Corp. (Montello) brought an action in the United States Bankruptcy Court for this district, naming as defendants Marin Motor Oil, Inc. (Marin); Marin's Trustee in Bankruptcy, David P. Michaels (Trustee); and Cities Service Company (CSC). The bankruptcy court, by order of October 21, 1982, granted summary judgment in favor of the Trustee and denied Montello's and CSC's motions for summary judgment. Montello and CSC have appealed from that decision. For the reasons stated herein, the decision of the bankruptcy court is affirmed as to Montello and the Trustee, but reversed as to CSC.

On March 24, 1981, Marin agreed to purchase from Montello, on credit, 25,000 barrels of gasoline at $.9725 per gallon. The gasoline was to be shipped under the following terms: "LIFTING: INTO BARGE(S) FOB ANY NEW YORK HARBOR TERMINAL, BUYER'S OPTION ANY APRIL, 1981." Marin was to pay Montello upon receipt of the goods and, in addition, an invoice from Montello and a certificate of inspection.

Nicholas Marin, president of Marin, nominated Barge B–100 (owned by Bouchard Transportation Co.) to take delivery of the gasoline. This barge arrived at the G.A. T.X. terminal in Carteret, New Jersey (considered a New York harbor terminal), on April 10, 1981, and the agreed-upon gasoline was loaded into the barge which then transported the product to a Linden terminal owned by CSC, with which Marin held a terminalling agreement. The gas was subsequently pumped from the barge into the terminal on the morning of April 11.

On April 13, 1981, Montello invoiced Marin for the gasoline in the amount of $1,032,570.35. Three days later, not having received payment, Montello filed a complaint against Marin in the Superior Court of New Jersey. This complaint requested damages in the invoice amount and preliminary relief restraining Marin from selling the gasoline delivered by Montello and requiring it to place its proceeds from sales of the gasoline in a segregated account. Montello additionally obtained an order to show cause from that court restraining Marin from making further sales of the gasoline in question.

At 11:04 p.m. on April 21, 1981, Jordan Ring, Massachusetts counsel for Montello, transmitted a Telex message to Marin demanding reclamation of the gasoline it had delivered. This message was received at Marin's office the morning of April 22, when the company opened for business.

Marin commenced proceedings for reorganization under chapter 11 of the Bankruptcy Code on April 21, 1981. Montello subsequently instituted the action which lies before us.

The bankruptcy court made various determinations in arriving at its decision on the summary judgment motions before it. It recognized that the exclusive remedy under the Bankruptcy Code for recovery of unpaid-for goods from an insolvent debtor lay in 11 U.S.C. § 546(c), which requires that the seller "demands in writing reclamation of such goods before 10 days after receipt of such goods by the debtor; . . ." The court determined April 11, 1981, to be the date of receipt by Marin for purposes of the running of the section 546(c) ten-day period. It found the only potentially valid reclamation demand to be the Telex message sent by Mr. Ring on the evening of April 21. The court decided, however, that the demand was effective, not upon the dispatch of April 21, but upon the April 22 receipt by Marin. It therefore ruled that there had been no effective demand for reclamation and granted summary judgment for the Trustee.

■ In reviewing the bankruptcy court's decision on this matter, it is first necessary to ascertain the date on which the debtor, Marin, can be said to have received the goods in question. There is no definition of "receipt" in the Bankruptcy Code, but section 2–103(1)(c) of the Uniform Commercial Code defines receipt of goods as "taking physical possession of them." The Trustee and CSC argue that the bankruptcy court should have found that the date of receipt by Marin was April 10, 1981, the date that the gasoline was delivered onto Barge B–100. Under the terms of its contract with Montello, title (accompanied by risk of loss) passed from Montello to Marin at this point.

It is proposed that under these circumstances possession by a common carrier constitutes possession as contemplated in the U.C.C. definition of receipt.

This reasoning, however, ignores the fact that U.C.C. § 2–705 gives the seller the right to stop delivery of goods in possession of a common carrier upon discovery of the buyer's insolvency. U.C.C. § 2–705 makes no mention of title, and it is thus apparent that transfer of title does not eliminate all possibilities for a seller to recover goods in transit. In an analogous situation, it has been held that oil, while being transported in a common carrier's pipeline at the buyer's expense, was in the possession of the carrier and not the buyer. *Amoco Pipeline Co. v. Admiral Crude Oil Corp.*, 490 F.2d 114, 117 (10th Cir.1974). Under these circumstances, it is apparent that Marin did not receive the gasoline in question until April 11, 1981, the date that it was pumped into CSC's terminal.

The Trustee and Marin attempt to establish that Montello may not have been able to invoke the section 546(c) remedies in any event, as it is allegedly not established that Marin was actually insolvent at the time it received Montello's gasoline. Montello has produced financial records providing strong evidence that Marin was in desperate financial straits immediately before and after (and, inferentially, during) the time of the transaction in question. While the other parties argue that Montello's evidence would be inadmissible at trial, they introduced no contradictory evidence of their own. Thus, it would have been incorrect for the bankruptcy court to determine as a matter of law that Marin was solvent on April 11, 1981. The central issue then becomes whether Montello's demand for reclamation was made on April 21 (putting it within the statutory limit) or at some time thereafter (rendering the demand ineffective).

The Bankruptcy Code itself contains no definition of demand, and no cases have directly addressed the issue in the context facing this court. Thus, it is necessary to examine the guiding purpose behind the

adoption of section 546 of the Code. Under common law, a seller could rescind a contract and obtain reclamation of goods if such option was sought within a reasonable time. Section 546—along with U.C.C. § 2–702(2)—was "designed to offer certainty and completeness" in this area. *In re Flagstaff Food Service Corporation,* 14 B.R. 462, 464 (Bkrtcy.S.D.N.Y.1981). An important goal of the new provisions was that "the 'reasonable time' for rescission under common law which might vary greatly according to the equities of a particular case is made certain by the flat imposition of a ten-day period." *In re Federals, Inc.,* 553 F.2d 509, 517 (6th Cir.1977).

The intent behind the relevant statutes can only be given practical effect if it is required that a section 546(c) demand be *received* within the ten days provided for. The alternative interpretation propounded by Montello would not foster "commercial certainty," as there would be no specific date at which chapter 11 debtors and creditors would know that all reclamation claims had been submitted. Instead, the situation would retain much of the open-ended nature it possessed under the common law. Reclamation demands would be effective if dispatched within ten days, although they might be received many days later or (carrying Montello's interpretation to its logical extreme) not received at all.

Montello contends that a requirement of receipt within ten days unfairly subjects the seller to risks occasioned by geographical distances, unreliable delivery, and the like. However, the means chosen by Montello to convey its own demand in the instant case demonstrates how modern means of communication have substantially eliminated such factors as potential hazards. A Telex message can be received instantly by the buyer and would have been so received here had Montello made the rather minimal effort to dispatch its demand during the business day. As the situation provoking the reclamation demand had been known to Montello for days in advance, it certainly cannot claim this instance as an example of the dangers caused by the difficulty and/or unpredictability of delivery.

■ Montello cites the case of *Action Industries v. Dixie Enterprises,* 22 B.R. 855 (Bkrtcy.S.D.Ohio 1982), in support of its reading of the section 546(c) deadline provision. The *Action Industries* court focused on the problems occasioned by the fact that the tenth day after a debtor's receipt of the goods in controversy fell on a Sunday. The decision impliedly found a reclamation demand received after the tenth day to be acceptable, although it did not directly address the issue as it is presented in the instant case. In any event, that opinion has no binding effect upon this court and provides no truly helpful precedent in view of the absence of any discussion of the merits of either a receipt or demand interpretation of the section 546(c) deadline. I hold that a reclamation demand must be received by the insolvent buyer within ten days after receipt of the goods, and Montello's attempted reclamation demand in this case was therefore ineffective.

■ Montello suggests, in the alternative, that its pleadings in its New Jersey Superior Court proceeding served as a demand for reclamation of the gasoline. However, the complaint and order to show cause filed by Montello in that proceeding request monetary damages and the prevention of further sale of the subject gasoline and do not seek return of the gasoline itself. When notice is required by a particular statute, the notice must explicitly and unambiguously inform the recipient of what is expected. *See In re Helms Veneer Corp.,* 287 F.Supp. 840 (W.D.Va.1978); *Frantz Equipment Co. v. Anderson,* 37 N.J. 420, 423, 181 A.2d 499 (1962). In the instant case, the state court pleadings were sufficient to put the other parties on notice that Montello wanted to be compensated for its monetary loss, but not that it expected return of the gasoline. This distinction prevents the pleadings from serving as a section 546(c) demand for reclamation.

The Trustee and CSC allege that there is some question as to whether the pleadings were properly served upon the correct parties within the required time. In light of

this court's characterization of these earlier pleadings, this issue need not be determined for purposes of the resolution of the motions presented. Similarly, as no effective reclamation demand was made on any party, it is unnecessary at this point to ascertain whether the goods were in the legal possession of CSC (as a good faith purchaser) on April 21, 1981, or whether CSC was acting as a bailee for Marin at that time.

In view of the bankruptcy court's ruling below on the ineffectiveness of the attempted reclamation demand, there is no apparent reason why the court denied CSC's motion for summary judgment. If no proper demand was made upon any party, CSC could obviously not be accountable for a failure to abide by such a demand. There remains no material issue of fact in the case as to Montello's complaint against CSC.

The October 21, 1982, decision of the bankruptcy court is affirmed as to the denial of Montello's motion for summary judgment and the granting of the Trustee's motion for summary judgment. The decision is reversed as regards its denial of CSC's motion for summary judgment. An order accompanies this opinion. No costs.