**In re PITTSBURGH–CANFIELD CORPORATION, et al.,[1] Debtors.**

**Nos. 00–43394 to 00–43402.**

United States Bankruptcy Court, N.D. Ohio.

March 13, 2003.

---

1. In addition to Pittsburgh–Canfield Corporation, the other debtors are Wheeling–Pittsburgh Corporation, Wheeling–Pittsburgh Steel Corporation, Consumers Mining Company, Wheeling–Empire Company, Mingo Oxygen Company, WP Steel Venture Corp., W–P Coal Company and Monessen Southwestern Railway Company.

James M. Lawniczak, Cleveland, OH, Joseph E. O'Leary, Boston, MA, Karen A. Visocan, Cleveland, OH, Kenneth S. Komoroski, Pittsburgh, PA, Michael E. Wiles, New York City, Michelle M. Proia, Wheeling–Pittsburgh Steel Corporation, Wheeling, WV, Scott N. Opincar, Cleveland, OH, for Debtors.

Craig E. Freeman, Kevin M. Golmont, Marc E. Richards, New York City, Michael A. Gallo, Youngstown, OH, for Creditor Committee.

***ORDER (1) CONFIRMING NON–PRIORITY STATUS OF RECLAMATION CLAIMS OF NORANDA, INC., YENKIN–MAJESTIC PAINT CORPORATION, MISSISSIPPI LIME COMPANY AND VALSPAR CORPORATION, AND (2) DEEMING SUCH RECLAMATION CLAIMS TO BE GENERAL UNSECURED CLAIMS AGAINST DEBTOR WHEELING–PITTSBURGH STEEL CORPORATION***

WILLIAM T. BODOH, Bankruptcy Judge.

This matter having come before the Court upon the Motion (the *"Motion"*) for Entry of an Order (1) Confirming Non–Priority Status of Reclamation Claims and (2) Deeming Reclamation Claims to be General Unsecured Claims Against Debtor Wheeling–Pittsburgh Steel Corporation (*"WPSC"*); and objections to the Motion having been filed by Millcraft Products, Inc. (*"Millcraft"*), Noranda, Inc. (*"Noranda"*), Yenkin–Majestic Paint Corporation (*"YMPC"*), Mississippi Lime Company (*"MLC"*), and Valspar Corporation (*"Valspar"*); and the Court having entered an Order on February 11, 2003, granting the Motion as to Vendors who did not oppose the relief sought in the Motion; and WPSC having agreed to defer the Motion indefinitely as to Millcraft, pending a possible assumption of WPSC's contract with Millcraft; and the Court having heard argument at a hearing (the *"Hearing"*) on January 30, 2003 concerning the Motion and the objections filed by Noranda, YMPC, Mississippi Lime and Valspar (the "Objecting Vendors"); and it appearing that the relief requested is appropriate and in the best interests of the Debtors' estates, their creditors and other parties in interest, and that good cause has been shown for the relief requested; and capitalized terms used but not defined herein being used with their defined meanings as set forth, or defined by reference, in the Motion;

IT IS HEREBY FOUND THAT:

A. On November 16, 2000 (the *"Petition Date"*), WPSC filed a voluntary petition under Chapter 11 of the Bankruptcy Code. WPSC has continued in the management and operation of its business and properties pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in WPSC's Chapter 11 case.

B. On the Petition Date, the Debtors moved for approval of a debtor-in-posses-

sion credit facility (the *"DIP Facility"*). This Court entered an interim order approving the DIP Facility on November 17, 2000 (the *"Interim DIP Order"*). This Court entered a final order approving the DIP Facility on December 13, 2000 (the *"Final DIP Order"*).

C. The Interim DIP Order and the Final DIP Order included certain provisions that related to the Third Amended and Restated Credit Agreement dated as of April 30, 1999 (the *"Prepetition Credit Agreement"*) between WPSC, certain financial institutions (the *"Prepetition Lenders"*) and Citibank, N.A., as agent. More specifically:

(i) Paragraph 7 of the Interim DIP Order, and paragraph 7 of the Final DIP Order, provided that the liens and security interests that secured the obligations under the Prepetition Credit Agreement (which consisted of liens and security interests in 100% of the eligible inventory of WPSC and of Pittsburgh–Canfield Corporation) would be deemed to have been assigned and transferred from the Prepetition Lenders to the lenders under the DIP Facility; and

(ii) Paragraph 8 of the Final DIP Order provided that the liens and security interests of the Prepetition Lenders would be deemed valid, and that any objections by any person to the "validity, sufficiency, extent, perfection, refinancing or avoidance" of such liens and security interests would be forever barred, unless the United States Trustee or an Official Committee of Creditors filed an objection thereto within one hundred twenty (120) days after the appointment of counsel to such Committees.

D. Neither the United States Trustee nor any Official Committee of Creditors filed any timely challenge or objection to the validity, sufficiency, extent, perfection, refinancing or avoidance of the liens and security interests granted to the Prepetition Lenders, and any such challenge is now barred by the terms of the Final DIP Order.

E. In addition, the Interim DIP Order and the Final DIP Order provided that the claims of the lenders under the DIP Facility would be secured by, among other things, a floating first priority, perfected lien upon all the Debtors' inventory and the proceeds thereof.

F. The Objecting Vendors made reclamation demands against WPSC on the following dates:

| Vendor | Date of Demand |
| --- | --- |
| Noranda | October 3, 2000 |
| YMPC | November 7, 2000 |
| Mississippi Lime | November 17, 2000 |
| Valspar | November 17, 2000 |

G. On March 8, 2001, this Court entered an Order (the *"Reclamation Procedures Order"*), (*a*) Prohibiting Third Parties from Interfering with the Debtors' Receipt, Use or Disposition of Goods and (*b*) Establishing Procedures for the Liquidation and Treatment of Reclamation Claims. The Reclamation Procedures Order established procedures to resolve factual disputes regarding the extent to which Reclamation Demands were made within the statutory time limits, the extent to which goods were in the actual possession of the Debtors and were specifically identifiable, and similar factual predicates to valid reclamation claims. Subparagraph (f) of the second decretal paragraph of the Reclamation Procedures Order further specified that:

(f) Following the determination of all of the Vendors' Reclamation Claim Amounts, in accordance with the foregoing procedures, the Debtors may commence further proceedings to determine the extent to which the Reclamation Claim Amounts are subject to further defenses by reason of liens granted to

the Debtors' secured creditors. In the alternative, the Debtors may propose to resolve such issues through a proposed plan of reorganization that specifies the extent to which the Reclamation Claims shall be treated as allowed administrative expense priority claims.

H. Pursuant to the Reclamation Procedures Order, the Debtors filed initial and final Reclamation Claims Reports which set forth the following agreed-upon value of the goods that are the subject of the Reclamation Demands filed by the Objecting Vendors:

| Vendor | Amount |
| --- | --- |
| Noranda | $342,037 |
| YMPC | $107,612 |
| Mississippi Lime | $143,353 |
| Valspar | $203,989 |

I. At the Hearing, WPSC's counsel proffered the testimony of Barry Trygar, WPSC's Director of Internal Audit, for the proposition that the goods that were the subject of the Reclamation Demands made by the Objecting Vendors had been consumed by WPSC, that such goods were subject to the liens and security interests of the Prepetition Lenders and of the lenders under the DIP Facility, and that all proceeds of such goods had been automatically paid to the lenders under the DIP Facility, in accordance with the liens and security interests held by those lenders. Mr. Trygar was available to testify and was available for cross-examination. No party at the Hearing requested an opportunity to cross-examine Mr. Trygar or objected to the proffered testimony.

J. Based on the proffer of Mr. Trygar's testimony, the Court finds that all of the goods that are the subject of the Reclamation Demands made by the Objecting Vendors have been sold or otherwise disposed of, that the proceeds of those goods have been applied to pay down revolving advances under the DIP Facility, and that none of those goods or the proceeds of those goods are available to segregate for payment to the Objecting Vendors.

THE COURT FURTHER MAKES THE FOLLOWING CONCLUSIONS OF LAW:

1. This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334(b), and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

■ 2. Section 546(c) of the Bankruptcy Code recognizes, within certain limitations, a vendor's right to reclaim goods upon discovery of a debtor's insolvency. However, a vendor only has such rights in a Chapter 11 case to the extent that such vendor would be entitled to reclaim such goods under applicable non-bankruptcy law. *See, e.g., In re Pester Refining Co.,* 964 F.2d 842, 847 (8th Cir.1992); *In re Steinberg's, Inc.,* 226 B.R. 8, 10 (Bankr. S.D.Ohio 1998); *In re Arlco, Inc.,* 239 B.R. 261, 266 (Bankr.S.D.N.Y.1999); *In re Victory Markets Inc.,* 212 B.R. 738, 741 (Bankr.N.D.N.Y.1997).

3. The Reclamation Demands of the Objecting Vendors are governed by the terms of Section 2–702 of the Uniform Commercial Code, as adopted in the States of Ohio and West Virginia. Section 2–702, as adopted in Ohio and West Virginia, provides that a seller's right to reclaim is subject to the rights of lien creditors. *See* Ohio Rev.Code Ann. § 1302.76(C) (West 2002) (right to reclaim is "subject to the rights of ... lien creditor"); W. Va.Code, § 46–2–702(3) (2002) (same). This is consistent with court decisions on the same subject. *See, e.g., In re Marko Electronics, Inc.,* 145 B.R. 25, 28 (Bankr.N.D.Ohio 1992); *In re Bensar Co.,* 36 B.R. 699, 702 (Bankr.S.D.Ohio 1984); *In re Melvin Liquid Fertilizer, Inc.,* 37 B.R. 587, 589

(Bankr.S.D.Ohio 1984); *In re Pester Refining,* 964 F.2d at 845.

■ 4. Where the specific goods sought to be reclaimed, or proceeds from those specific goods, are used in full to satisfy a secured creditor with a lien in such goods, then the vendor's reclamation demand has no value and is nullified as a matter of law. *See In re Pester Refining,* 964 F.2d at 847; *Dixie Enterprises,* 22 B.R. 855 (Bankr.S.D.Ohio 1982); *In re Victory Markets,* 212 B.R. at 743; *In re Arlco,* 239 B.R. at 276; *In re Video King of Illinois, Inc.,* 100 B.R. 1008, 1017 (Bankr. N.D.Ill.1989).

■ 5. Several of the Objecting Vendors have argued that the lenders under the DIP Facility may be over-secured, and that a reclaiming seller should be awarded an administrative claim for the full amount of its reclamation demand so long as sufficient general surplus proceeds remain from *any* collateral. *See, e.g.* Noranda Objection, at ¶¶ 18–22; Valspar Objection, at ¶ 9; YMPC Objection, at ¶ 23. The record before the Court is not sufficient to demonstrate the value of the collateral that secures the obligations under the DIP Facility. However, a vendor's right to reclaim goods, or alternatively to receive an administrative claim or replacement lien under Section 546(c)(2), is dependent on the actual disposition of the specific property that is the subject of the reclamation demand. *See Dixie Enterprises,* 22 B.R. 855, (Bankr.S.D.Ohio 1982); *In re Steinberg's,* 226 B.R. at 12; *In re Pester Refining,* 964 F.2d at 847; *In re Victory Markets,* 212 B.R. at 743. If the specific goods that are the subject of the reclamation demands have been used to repay secured creditors, then the reclamation demands are nullified, regardless of whether there might be an excess of other collateral. *See In re Arlco,* 239 B.R. at 276; *In re Pester Refining,* 964 F.2d at 847.

■ 6. Similarly, the Objecting Vendors have no right to invoke the equitable doctrine of marshaling, because each of the Vendors is unsecured as to its reclamation claim. *See In re Arlco,* 239 B.R. at 273–276; *In re Prichard,* 170 B.R. 41, 45 (Bankr.N.D.N.Y.1994).

7. Accordingly, the availability of alternative collateral to the lenders under the DIP Facility is irrelevant to the determination of the Objecting Vendors' entitlement to relief under Section 546(c)(2).

8. In some cases, courts have awarded reclamation claimants a full administrative claim, despite the fact that neither the goods nor proceeds from such goods were available to reclaim. *See In re Sunstate Dairy & Food Products Company,* 145 B.R. 341 (Bankr.M.D.Fla.1992); *In re Bosler Supply Group,* 74 B.R. 250 (N.D.Ill. 1987). These cases, however, represent the minority view and have been properly criticized by other courts. *See Pester Refining,* 964 F.2d at 847 (8th Cir.); *In re Steinberg's,* 226 B.R. at 12 (Bankr. S.D.Ohio); *In re Arlco,* 239 B.R. at 273; *In re Primary Health Systems,* 258 B.R. at 117; *In re Flooring America, Inc.,* 271 B.R. at 920.

■ 9. WPSC did not waive its right to seek the relief requested in the Motion and is not estopped from seeking such relief. Subparagraphs (f) and (g) of the Reclamation Procedures Order preserved WPSC's right to make the Motion, and WPSC's motion for that order made clear that WPSC reserved its right to seek the relief sought in the Motion.

10. The Motion is not foreclosed by paragraph 19(c) of the Final DIP Order, which stated as follows:

Unless the Agent has provided its prior written consent or all Obligations under the DIP Credit Facility have inde-

feasibly been paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default if there shall be entered in these proceedings, or in any successor cases, any order which authorizes (other than as permitted under the DIP Credit Agreement):

\* \* \* \* \* \*

(c) any payment or the transfer of any property on account of claims asserted by vendors of any Debtor for reclamation in accordance with section 546(c) of the Bankruptcy Code, or the Debtors' return of goods constituting Collateral pursuant to section 546(g)\* of the Bankruptcy Code, *provided* that nothing herein shall preclude the entry of any order granting a claim, under Bankruptcy Code section 503(b) and in accordance with Bankruptcy Code section 546(c)(2)(A), to a vendor asserting a valid reclamation claim.

*See* Final DIP Order, ¶ 19(c). Paragraph 19(c) of the Final DIP Order did not dictate the treatment that reclamation claims would be given. Paragraph 19(c) confirmed that an order granting an administrative claim to a reclamation claimant would not constitute an Event of Default under the DIP Facility, but it did not limit any of the defenses that the Debtors could assert in challenging the reclamation demands.

■ 11. WPSC properly sought the requested relief by way of motion. The relief sought does not relate to the validity of a "lien" because, as stated above, a reclamation right is not a lien or security interest. The relief sought also does not amount to a request for a declaratory judgment that would require the commencement of a separate adversary proceeding. Finally, the Motion did not constitute an objection to a claim. Instead, the Motion sought to allow the reclamation demands as pre-petition unsecured claims.

■ 12. No discovery requests were served by the Objecting Vendors. Although several of the Objecting Vendors argued that they should be allowed to take discovery as to the "good faith" of the Prepetition Lenders and the lenders under the DIP Facility, they did not identify any question as to such "good faith" that would warrant such discovery. *See, e.g., In re Steinberg's, Inc.,* 226 B.R. 8, 11–12 (secured creditor who enforces security agreement "in a manner consistent with the clear terms thereof" acts in good faith; discovery not proper unless reclaiming seller shows "some basis on which to question" the secured creditor's good faith); *In re Wathen's Elevators, Inc.,* 32 B.R. 912, 920–21 (Bankr.W.D.Ky.1983) ("good faith" only requires honesty and reasonable commercial standards; secured creditor's alleged "knowledge" of reclamation demands is irrelevant to good faith); *In re Arlco, Inc.,* 239 B.R. 261, 271–72.

13. WPSC provided adequate notice of the Motion, and no party was prejudiced by the procedure that was followed.

IT IS THEREFORE ORDERED:

1. The Motion is granted in its entirety with respect to the Objecting Vendors.

2. The Objecting Vendors shall not be entitled to any relief contemplated by Section 546(c)(2) of the Bankruptcy Code with respect to their respective Reclamation Demands and Reclamation Claim Amounts, and shall not be entitled to an administrative expense claim or a replacement lien in respect of their Reclamation Demands or their Reclamation Claim Amounts.

3. The following Reclamation Claim Amounts of the Objecting Vendors shall be allowed as nonpriority general unsecured claims against WPSC in following amounts, and the Objecting Vendors shall

not be required to file proofs of claim in respect of such claims:

| Vendor | Amount |
| --- | --- |
| Noranda | $342,037 |
| YMPC | $107,612 |
| Mississippi Lime | $143,353 |
| Valspar | $203,989 |

4. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.